STEVENS *v.* CHANDLER MOTOR COMPANY, INC. ET AL.

[No. 194, September Term, 1959.]

*Decided May 16, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Kelley Litteral* and *Harold T. Grier,* for appellant.

*Carleton U. Edwards, II,* and *John J. Pyne,* for appellees.

HORNEY, J., delivered the opinion of the Court.

As the result of a collision between two automobiles during a snowstorm on the snow-covered highway from Gaithersburg to Rockville, on February 1, 1958, three suits were filed in the Circuit Court for Montgomery County. The losing party, claiming error in the instructions to the jury, seeks reversal of the judgments entered against her.

The Chandler Motor Company, Inc. (Chandler), the owner of the Mercury automobile involved in the accident, sued Georgia Belle Stevens and Charles Stevens (the Stevens) for property damage (in No. 7829). Virginia Bryant Holmes (Holmes), operator of the Mercury, sued the Stevens for personal injuries (in No. 7956). The Stevens (Georgia Belle and Charles), the operator and owner, respectively, of the Chevrolet automobile involved in the accident, countered by suing Holmes and Chandler for personal injuries and property damage (in No. 8207). The suits were consolidated for trial. At the close of the testimony, Chandler and Holmes (the appellees here) entered voluntary nonsuits (in Nos. 7829 and 7956) as to Charles Stevens. The verdicts of the jury were in favor of Chandler and Holmes in all three cases. When the trial court denied motions for new trials and judgments *n. o. v.,* only Georgia Belle Stevens (the appellant here) appealed from the judgments—two for money damages and one for costs—entered on the verdicts. The only claim of error is based on the refusal of the trial court to grant an instruction as to the possibility of a sudden emergency.

Shortly before noon on the day of the accident, as the au-

tomobiles were proceeding one toward the other on the twenty-four-foot wide, two lane road—the appellant going south toward Rockville and the appellee Holmes going north toward Gaithersburg—the Chevrolet operated by the appellant, suddenly swerved to the left from the southbound lane into the northbound lane in front of the oncoming Mercury, operated by the appellee Holmes. The two automobiles collided. The point of impact (in the northbound lane) was approximately two feet from the center of the road. The front of the Mercury struck the right rear fender of the Chevrolet. After the collision the Chevrolet continued on across the northbound lane to a point approximately twenty feet off of the highway before coming to a stop. The Mercury came to a stop with both right wheels on the shoulder of the northbound lane. The evidence as to how the accident happened is conflicting.

According to the appellant, as she approached a left curve, she saw the Mercury come around the curve and on to the straightaway and that as it rounded the curve it was on her (the appellant's) side of the road. At the hospital, approximately a half-hour later, after she had regained consciousness, the appellant was unable to give the trooper, Charles F. Gowans, any reason why the accident happened except that as she was going south on the snow-covered road she suddenly lost control as the Chevrolet went to the left and collided with the Mercury. However, at the trial, the appellant testified to the effect that when she saw the Mercury coming toward her, she judged or guessed from the "bank and telephone poles," that it was in her path; that she was very positive the Mercury was on her side of the road when she "had that little time to do something;" and that as a consequence she "immediately just switched and turned left" as she "saw this oncoming car." Even on cross-examination, her testimony was much the same, though she admitted, since she could not see the center line for the snow, that she could have been mistaken as to where the Mercury was on the roadway when she first saw it, and reiterated that it was on the straightaway when the accident occurred.

According to the appellee Holmes, and A. B. E. Anderson,

Jr., the operator of the automobile following her, she never got out of the northbound lane in which she was traveling. In court she (the appellee Holmes) testified to the effect that "at approximately four car lengths" from her the Chevrolet made a sudden and abrupt turn into the path of the Mercury, which was in the right hand (northbound lane) of the highway; and that she was not "in the southbound lane" at any time. The disinterested witness testified to the effect that when he noticed the Chevrolet, some ten car lengths away, "it appeared that the back end was fish-tailing" and "skidding slightly;" that subsequent to the skidding the Chevrolet "appeared to go out of control and cross the highway" in front of the car in front of him; that realizing a collision was imminent, he applied his brakes as the automobile (the Mercury) ahead did the same; that the collision was in the northbound lane; and that after the impact the Chevrolet "swung or slid around and went backwards" into the field on the right side of the northbound lane and "ended up facing out toward the highway."

The trial court charged the jury generally as to primary and contributory negligence and as to proximate cause, the burden of proof and the measure of damages. The jury was also informed when and under what circumstances the negligence, if any, of the respective operators of the automobiles could be imputed to the respective owners and when such negligence could not be so imputed. The jury was further instructed with respect to the rule of the road based on Code (1957), Art. 66½, § 218, concerning the passing of vehicles proceeding in opposite directions. But no reference was made to § 217 (of Art. 66½), which regulates driving on the right side of a roadway. No request was made for an instruction based on § 217, *supra,* and no exception was taken to its omission. In connection with § 218, *supra,* the court fully charged the jury as follows:

> "[B]ut since the evidence, in some degree, discloses that a traffic violation may be involved, the Court is going to instruct you on the traffic violation or traffic law pertaining to the case. Drivers of vehicles proceeding in opposite directions shall pass

each other to the right and upon roadways having
widths of not more than one lane of traffic in each
direction, each driver shall give to the other at least
one-half of the main traveled portion of the road-
way, as nearly as possible. Now that is the statute
law of Maryland with reference to vehicles passing
on a highway where there are two lanes, but the
violation of a traffic regulation does not of itself
constitute negligence unless such violation is the
proximate cause of the accident."

Although requested, the court refused to instruct the jury
with respect to the assertion by the appellant Stevens that she
had acted in an emergency which could excuse apparent neg-
ligence. There was an exception to the failure to instruct on
this point.

Under the circumstances in this case, where it was uncon-
tradicted that the collision occurred on the appellant's wrong
side of the road, the instructions given, particularly the part
quoted above, absent an adequate instruction with respect to
negligence on the part of the appellee Holmes and/or absent
an instruction embodying the theory of the appellant that she
had been confronted with a sudden emergency, was tanta-
mount to a directed verdict in favor of the appellees.

If the instructions bearing on the alleged primary negli-
gence of the appellee Holmes in the case (No. 8207) of
Stevens against Chandler and Holmes had been adequate,
we think the necessity of invoking the emergency doctrine
would have been eliminated. But the instruction on this point
was clearly deficient. Other than mere reference in a gen-
eral way to primary negligence the instructions did not deal
with the situation it is claimed existed as of the few seconds
before the collision occurred when the Mercury automobile
first rounded the curve and came into the appellant's view.
Indeed it appears that the only reference to the rules of the
road was confined to the one concerning the passing of au-
tomobiles approaching in opposite directions. The rule of
the road requiring motor vehicles to be driven on the right
side of the road was not mentioned, yet a violation of that
rule will constitute negligence, if, but only if, it was a direct

or proximate cause of the injury. *Cocco v. Lissau,* 202 Md. 196, 95 A. 2d 857 (1953). Thus, the issue of contributory negligence was submitted to the jury on instructions which emphasized the facts as of the moment of passing or attempted passing and not those which existed just before that moment.

The appellant could have requested instructions, based on her theory of the facts, that the jury be charged as to the negligence of the appellee Holmes as well as to the emergency. Had an instruction as to the negligence of Holmes been given, her negligence, if any, would, of course, have been contributory in the cases (Nos. 7829 and 7956) of Chandler and Holmes against Stevens. The appellant, however, sought such an instruction only as to the alleged emergency. We think the refusal to give it in these two cases was clearly erroneous.

It has been held that "[o]ne who is apparently guilty of negligence excuses his apparent negligence by asserting that he acted in an emergency and that what in other circumstances would have been negligence is not negligence in view of the emergency." *Sonnenburg v. Monumental Motor Tours,* 198 Md. 227, 238, 81 A. 2d 617, 622 (1951). Other than this case it seems superfluous to cite many authorities in support of this well known rule of law. In the recent case of *Lehmann v. Johnson,* 218 Md. 343, 146 A. 2d 886 (1958), Chief Judge Brune, speaking for the Court, had occasion to review many of the aspects of the emergency doctrine in this State. Most, if not all, of the Maryland cases were cited therein.

As we see it, the doctrine of negligence in emergencies is a defense or a shield against liability. It may, but need not, come into play as the result of negligence on the part of a plaintiff. Here (at least in Nos. 7829 and 7956), the legal shield had to spring from action on the part of the appellee Holmes which was negligent. Whether or not there was in fact an emergency as the appellant alleged should have been submitted to the jury. *Warnke v. Essex,* 217 Md. 183, 141 A. 2d 728 (1958). But the court refused to submit the question (the alleged emergency) to the jury and no one thought of submitting to the jury the other point (the contributory negligence of Holmes), which arose out of the same set of

facts. As a result the appellant was left without a defense though she had properly presented one.

There is, therefore, no doubt that the judgments in the cases (Nos. 7829 and 7956) of Chandler and Holmes against Stevens must be reversed and remanded for new trials unless we can rule, as the appellees insist we should, that the error of refusing to grant an emergency instruction was not prejudicial because it was cured by the verdict. Their contention—based on the conclusion that since the verdict of the jury in the case (No. 8207) of Stevens against Holmes and Chandler necessarily was bottomed on a finding that the appellee Holmes was not guilty of any primary negligence in that case, it also established that she was not guilty of any contributory negligence in the cases (Nos. 7829 and 7956) of Chandler and Holmes against Stevens—is that the jury by its verdict indicated that it had accepted the appellees' version of the facts which did not raise the emergency issue. The difficulty with this contention is that the verdicts must do more than indicate the possibility that the jury accepted one party's version of the facts rather than the facts relied on by the opposing party. The principle of the cases seems to be that a court may not rule that an error in refusing to grant an instruction or the giving of an erroneous charge can be cured by the verdict when the court is required to speculate as to what facts the jury relied on in reaching the verdict it did.

Since there is no doubt that the lower court should have given an emergency instruction, the real question, then, seems to depend on whether it is necessary for a court to speculate as to what facts or circumstances, or combinations thereof, induced the jury to decide as it did. It is, of course, impossible to hold that the verdict will cure the failure to give an instruction, or the giving of an erroneous one, in every case. On the contrary, each case must be separately examined to ascertain, for instance, (i) whether the position of the objecting party would have been improved if the instruction had been granted as requested since the primary question of liability had been resolved in his favor; [1] or (ii) whether the

---

1. See, for example, *Bloom v. Graff*, 191 Md. 733, 63 A. 2d 313

verdict of the jury was consistent and based primarily on a necessary sequential consideration of the issues involved;[2] or (iii) whether the verdict was based on a fact, or combinations of facts, which would necessarily impel the jury to decide as it did and make it unnecessary for the court to speculate as to the specific facts which motivated the verdict.[3, 4]

In the two cases (Nos. 7829 and 7956) of Chandler and Holmes against Stevens, it is quite possible that the jury, had it been given an appropriate emergency instruction, might also have found that the appellant was not at fault in view of the emergency. Besides, and more to the point, it is evident that we cannot determine without speculation what facts, or combinations thereof, caused the jury to find that the appellee Holmes was not negligent. The jury could have believed (i) the testimony of the trooper that the appellant had stated that

(1949) [verdict of jury for plaintiff against only one of the defendants]; and *Havens v. Schaffer,* 217 Md. 323, 142 A. 2d 824 (1958) [verdict of jury for both plaintiffs but money damages awarded to only one of them]. In each of these cases, the objecting party was also the successful party and would have been no better off if the instructions had been otherwise because the verdict was in his favor.

2. See, for example, *Van Houtum v. Associated Broadcasting Corp.,* 326 Mich. 736, 40 N. W. 2d 784 (1950) [since verdict of jury showed there was no offer to refund moneys improperly paid, question of acceptance of offer never arose]; and *Lawrence v. Merrick,* 252 S. W. 2d 5 (Ky. 1952) [since verdict of jury was for defendant on counterclaim, question of liability of defendant for damages was not reached]. In each of these cases, the objecting party was the losing party, but there was no doubt that had the omitted instruction been given the jury would still have decided the case as it did.

3. See, for example, *Sieland v. Gallo,* 194 Md. 282, 71 A. 2d 45 (1950) [since verdict of jury indicated defendants were not negligent, erroneous instruction concerning contributory negligence could not prejudice plaintiff].

4. These examples are, of course, often overlapping and are not intended to be precise and inflexible categories. Neither do they purport to be exhaustive or definitive of the many different situations that may arise. Instead, they merely serve to illustrate some of the necessary considerations in examining each case separately to see if *in fact* the verdict of the jury cured instructions erroneously given or refused.

she had lost control of her automobile when it suddenly turned to the left; or the jury could have believed (ii) the testimony of the disinterested witness that the appellant's fish-tailing and skidding indicated a speed greater than was reasonable and proper under the circumstances; or the jury could have believed (iii) that the appellee Holmes had remained on her side of the road at all times and was not negligent; or the jury could have believed (iv) that, although the appellee Holmes crossed the center line onto the appellant's side of the road, she returned to her own side in time to avoid being guilty of negligence. In any of these situations the jury could have found that the appellee Holmes was not negligent. In the first three factual situations, and particularly the third, the existence of an emergency was not a factor, but in the fourth incident, there was the possibility of an emergency situation—in that the jury might have believed, had an appropriate emergency instruction been given, that the appellee Holmes crossed the center line in such close proximity to the point of collision as to cause the appellant Stevens to suddenly turn to the left—which, if found to exist, would have excused the appellant from liability. It is this possibility that the jury may have found otherwise that precludes us from ruling in these two cases that the verdict cured the error. Moreover, the fact that the appellant tried to make use of the pertinent alleged facts only as one kind of legal shield (emergency) when these same facts would have also served equally as well as another legal shield (contributory negligence) should not deprive her of the right to use the first one. Certainly, no intentional waiver of their attempted use for one purpose can be shown by the failure to try to use them for another. For the reasons stated these two cases (Nos. 7829 and 7956) will be reversed and remanded for new trials.

But in the case (No. 8207) of Stevens against Holmes and Chandler—though it is not based on any theory of the curative effect of the verdict of the jury—it appears that the judgment for costs in favor of the appellees must be affirmed. In this case, where the appellant was the plaintiff and not the defendant, the existence of an emergency as such had no appli-

cation. This is so because the doctrine of negligence in emergencies is an excuse for apparent negligence and not a ground of negligence. *Sonnenburg v. Monumental Tours, supra.* Notwithstanding that an emergency, however created, may only be used as a shield against liability by a defendant in an original action by a plaintiff, it is possible, nevertheless, for the negligent acts of the party, which gave rise to or created the emergency, to constitute primary negligence, which can be used as a sword to establish liability for negligence in a counter-action of the original defendant against the original plaintiff, or when actions are consolidated for trial as these were. Thus, in this case (No. 8207), where there was evidence of primary negligence, which it is claimed created or gave rise to the emergency situation—to the effect that in rounding the curve the appellee Holmes had crossed the center line onto the appellant's side of the road—the appellant had a right to use such evidence as a sword against the appellees. But, as hereinbefore stated, this aspect of the case was not submitted to the jury. The appellant—apparently relying entirely on the rejected request for an emergency instruction —failed to seek an instruction based on her version of the facts as to primary negligence and the court gave none. Under such circumstances, there is no doubt that the appellant thereby lost her right to use the alleged primary negligence of the appellee Holmes as a sword in her claim for damages against Holmes and Chandler. Since there was no request for a charge on this aspect of the case, the absence thereof could not be the basis for a reversal on this appeal, and the judgment for costs in this case (No. 8207) must therefore be affirmed.

We deem it unnecessary to discuss the other contentions of the appellees—that (i) the form of the requested instruction was ambiguous and misleading [in that it lacked some of the essential elements of an emergency charge and had misstated others] and (ii) that the blackboard diagram of the scene of the accident was not preserved by the appellant— which, in any event, were inconsequential. As to the first, the appellees are referred to Maryland Rule 554 b 1 and particularly Rule 554 c. As to the second, the record discloses that

the duty of preserving the diagram, assuming it could have been preserved, was as much the responsibility of the appellees as it was of the appellant. We also deem it unnecessary to discuss the motion for an order requiring the appellant to give security for costs. We know of no authority for such action on our part and we have been referred to none. Rule 328, concerning security for costs in the lower court, applies only to nonresident plaintiffs and stockholders owning less than 5% of the stock of the corporation. The motion will be dismissed.

> *Judgments in Nos. 7829 and 7956 reversed and cases remanded for new trials; judgment in No. 8207 affirmed; two-thirds of costs to be paid by appellees and one-third by appellant.*

HENDERSON, J., dissenting in part, filed the following opinion.

Upon the authority of *Sieland v. Gallo,* 194 Md. 282, 287, and the cases there cited, I think the alleged error, in the failure to instruct as to the effect of an emergency, was cured by the verdicts. See also *Wright v. Baker,* 197 Md. 315, 318. It is true that here the consolidated cases were not tried upon issues, as in the case last cited, but a correct analysis of the jury's findings leads inevitably, I think, and without "speculation," to the conclusion that the alleged error was harmless.

In the action by Mrs. Holmes against Mrs. Stevens, the verdict in favor of Mrs. Holmes could only be predicated upon findings that Mrs. Stevens was negligent and that Mrs. Holmes was not guilty of contributory negligence. Again, in the action by Mr. Stevens against Mrs. Holmes, since he as the owner of the vehicle used by Mrs. Stevens on her own account, would not be barred by the contributory negligence of Mrs. Stevens, the verdict in favor of Mrs. Holmes could only be predicated upon a finding that Mrs. Holmes was free from negligence. It would seem to follow, as the night the day, that the alleged emergency was not created by the neg-

ligence of Mrs. Holmes, but on the contrary was created by the negligence of Mrs. Stevens. As the majority opinion recognizes, the emergency rule is not applicable if the peril is created by the negligence of the party invoking it. *Williams v. Dawidowicz,* 209 Md. 77, 83, cited in *Lehmann v. Johnson,* 218 Md. 343, 347.

Factually, the issues in the instant case were simple, and capable of resolution by the determination of whether one or both of the operators were at any time upon the wrong side of the road. The majority opinion outlines only one theory upon which Mrs. Stevens could recover, in suggesting that the jury could have believed Mrs. Holmes crossed the center line when rounding the curve, but that she had returned to her own side "in time to avoid being guilty of negligence," and that there was "the possibility of an emergency situation, which, if found to exist, would have excused the appellant [Mrs. Stevens] from liability." In my view, if Mrs. Holmes crossed the center line at any time, in such proximity to the point of collision as to be the cause of Mrs. Stevens' turn to the left, the jury could not have found Mrs. Holmes free of negligence. Conversely, if Mrs. Stevens turned to the left, at a time when such a choice was not forced upon her by Mrs. Holmes, Mrs. Stevens would not be excused from the consequence of her choice, even if she had been in the proper lane at that time. In short, I can visualize no factual situation, consistent with the findings of the jury, that would allow her to recover against Mrs. Holmes, or *vice versa.* I think all of the judgments should be affirmed.