500 A.2d 636

**Pearl TRANEN et vir.**

v.

**Barbara AZIZ et al.**

No. 120, Sept. Term, 1984.

Court of Appeals of Maryland.

Dec. 2, 1985.

606

Lawrence S. Greenwald (Donald N. Rothman, Nancy E. Paige and Gordon, Feinblatt, Rothman, Hoffberger & Hollander, on brief), Baltimore, for appellants.

Jeanette A. Plante, Baltimore, and Mark D. Siegel, Washington, D.C. (John F. King, Anderson, Coe & King, Baltimore, and Michaels & Wishner, Washington, D.C., on brief) for appellees.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and McAULIFFE, JJ. and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals of Maryland (retired, Specially Assigned).

COLE, Judge.

We shall here determine the procedures an aggrieved party must follow to obtain judicial review[1] of an arbitration award under the Health Care Malpractice Claims Act.

The facts are not in dispute. Mrs. Pearl Tranen and her husband, appellants, filed a claim in the Health Claims Arbitration Office against Barbara S. Aziz, M.D., Patuxent Medical Group, P.A. and Columbia Medical Plan, Inc., appellees, for Dr. Aziz's alleged negligent failure to diagnose breast cancer in Mrs. Tranen. After hearing the Tranens' claim, the Health Claims Arbitration Panel made an award in favor of Dr. Aziz on September 14, 1983. Mr. and Mrs. Tranen received official notice of the award on October 3, 1983.

On October 14, 1983, the Tranens filed a declaration and Election of Jury Trial in the Circuit Court for Howard County. The declaration alleged the same acts of negli-

---

1. "Judicial Review" is the phrase used in the Health Care Malpractice Claims Act to describe the procedure by which a party aggrieved by an arbitral award may seek redress before a circuit court. The term is not used in the traditional sense as a review of an administrative proceeding in that the arbitration panel is not an administrative body. *See* Attorney Gen. v. Johnson, 282 Md. 274, 285–86, 385 A.2d 57, 63–64, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978).

gence as had been alleged in the arbitration proceeding. The declaration was silent, however, as to the prior arbitration of the claim. On November 9, 1983, thirty-seven days after the receipt of notice of the award, appellants mailed a copy of the declaration to the Director of the Health Claims Arbitration Office.

Soon after the declaration was filed, appellees filed Motions Raising Preliminary Objection which alleged that the circuit court lacked subject matter jurisdiction because the Tranens failed to comply with the judicial review requirements set forth by the Act and by the Maryland Rules. On December 8, 1983, the Tranens filed a pleading entitled Notice of Action and an amended declaration with the Clerk of the Court.

Judge J. Thomas Nissel granted appellees' Motions Raising Preliminary Objection and reasoned, in a Memorandum and Order dated March 14, 1984, that the judicial review requirements of the Act were mandatory, and that the Tranens' noncompliance with the Act required dismissal of their action. The Court of Special Appeals affirmed in *Tranen v. Aziz*, 59 Md.App. 528, 476 A.2d 1170 (1984). We granted the Tranens' Petition for Writ of Certiorari.

The legislature in 1976 enacted this State's Health Care Malpractice Claims Statute, Md.Code (1974, 1977 Cum. Supp.), §§ 3–2A–01 to 3–2A–09 of the Courts Article (The Act),[2] which requires that certain claims be submitted to arbitration for initial determination of liability and damages before being submitted to a court of law. The Act provides that all claims against health care providers seeking damages in excess of $5,000 must be filed with the Health Claims Arbitration Office. That office, acting through its director, refers all issues to be resolved to a three member arbitration panel consisting of an attorney, a health care

---

**2.** All subsequent references to the Act are to the 1984 Replacement Volume of the Courts Article.

provider, and a member of the general public (all members chosen at random). The panel conducts a hearing, determines the liability, if any, of the health care provider, and expresses its decision in an award. If no party rejects the award, it becomes final and binding and is filed by the Director in the appropriate circuit court. When confirmed by that court, the award becomes a final judgment. *See* §§ 3–2A–02 through 3–2A–05(h).

The issues in this case revolve around what a party aggrieved at the award must do to invoke judicial review. We turn then to § 3–2A–06 of the Act which provides, in part, as follows:

(a) *Rejection of award.*—A party may reject an award for any reason. A notice of rejection must be filed with the Director and the arbitration panel and served on the other parties or their counsel within 30 days after the award is served upon the rejecting party, or, if a timely application for modification or correction has been filed within 10 days after a disposition of the application by the panel, whichever is greater.

(b) *Action to nullify award.*—At or before the time specified in subsection (a) for filing and serving a notice of rejection, the party rejecting the award shall file an action in court to nullify the award and shall file a copy of the action with the Director. Failure to file this action timely in court shall constitute a withdrawal of the notice of rejection. Subject to the provisions of subsection (c), the procedure applicable to the action including the form and necessary allegations in the initial pleading shall be governed by the Maryland Rules. If any party to the proceeding elects to have the case tried by a jury in accordance with the Maryland Rules, it shall be tried by a jury. Otherwise, the case shall be tried by a judge. The trial date for each rejection of a panel determination shall have precedence over all cases except criminal matters and workmen's compensation appeals.

It is clear that the statute requires two [3] separate undertakings to obtain judicial review: first, § 3–2A–06(a) calls for a notice of rejection to be "filed with the Director and the arbitration panel and served on the other parties or their counsel within 30 days after the award is served upon the rejecting party ..."; second, § 3–2A–06(b) requires that, within the time limits for rejecting the award, the aggrieved party "shall file an action in court to nullify the award and shall file a copy of the action with the Director."

Because an action to nullify is wholly an action in the circuit court, § 3–2A–06(b) provides that the procedures applicable are to be governed by the Maryland Rules. Maryland Rules BY1—BY6 are applicable to an action to nullify an arbitration award, and Rule BY2 a provides that such an action "shall be commenced by filing notice of the action with the clerk of the court.... The notice shall identify the award and state that it is being rejected by the party filing the notice." Rule BY4 provides that "[w]ithin 30 days after the filing of the notice of action, the plaintiff shall file and serve a declaration."

In the instant case, the Tranens did not file a notice of rejection pursuant to § 3–2A–06(a) or a notice to nullify action pursuant to Rule BY2. Nevertheless, they maintain that the court should not have dismissed their action. They argue first that filing a notice of rejection is not a prerequisite to filing a court action under the Act, and second that their filing a declaration and sending a copy of the declaration to the Director constituted substantial compliance with § 3–2A–06 and Rule BY2. We disagree.

■ The legislature has fashioned through the Health Care Malpractice Claims Act a mandatory framework for the resolution of health claims. *See Attorney General v. Johnson,* 282 Md. 274, 385 A.2d 57, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978). The Act

---

**3.** We are not here concerned with § 3–2A–06(c), which relates to "Modification, correction, or vacation of an award"; thus, we do not discuss its ramifications.

unequivocally provides for the exclusiveness of its procedures. Section 3–2A–02(a) proclaims that a health claims action "may not be brought or pursued in any court of this State *except in accordance with this subtitle.*" (Emphasis added). Although by this mandate the Act does not divest the circuit court of subject matter jurisdiction to hear a dispute involving a health claim, it "creates a condition precedent to the institution of a court action...." *Oxtoby v. McGowan,* 294 Md. 83, 91, 447 A.2d 860, 864–65 (1982) (quoting *Attorney General v. Johnson, supra,* 282 Md. at 283–84, 385 A.2d at 63).

■ Submission of the malpractice dispute to arbitration does not in itself satisfy the condition precedent to court action; the litigants must follow the special statutory procedures prescribed by the Act. *See Oxtoby v. McGowan, supra,* 294 Md. at 91, 447 A.2d at 864. Both the notice of rejection provision ("notice of rejection *must* be filed," § 3–2A–06(a) (emphasis supplied)) as well as the action to nullify provision ("the party rejecting the award *shall* file an action in court to nullify the award," § 3–2A–06(b) (emphasis supplied)) are posed in imperative terms. More important, the statutory context of these directives plainly shows that compliance with them is mandatory and that noncompliance mandates dismissal.

The purpose of the legislative scheme is clear upon careful analysis. The notice of rejection serves as the final step in the arbitration procedure by which the award may be held non-binding and the claim held open for judicial resolution. The action to nullify, on the other hand, is the exclusive step by which the aggrieved party may initiate proceedings in court.

■ Appellants contend that § 3–2A–06 does not require the filing of a notice of rejection as a prerequisite to a court action because, under § 3–2A–06(b), an action to nullify may be commenced in court before the notice of rejection is filed. Although the action to nullify may be filed before the notice of rejection, filing notice of rejection is nevertheless neces-

sary to *maintain* an action in circuit court. If the Director does not receive a notice of rejection, the Director must file the arbitral award in the circuit court, and the court must confirm the award. § 3–2A–05(h). It is thus apparent from the face of the Act that the notice of rejection is a prerequisite to the maintenance of a court action. Even if one timely files an action to nullify, his failure to file a notice of rejection precludes further proceedings in court on that action.

■ The sanction which attends failure to file notice of rejection thus may be readily perceived. Through failure to file notice of rejection, the arbitration decision becomes final and binding. It is through filing the notice of rejection with the Director that the cause may be kept viable for judicial proceedings. We note that the Director's function at this stage is no less important than his function at the previous stages of the arbitration process. The Director serves an integral function in the mandatory framework of the Act. The Director: adopts the rules and regulations to govern the procedures under the Act, § 3–2A–03(b)(3); is the recipient of all claims, responses and other documents filed, § 3–2A–04; selects arbitrators to hear the claims, § 3–2A–04(b) to (e); refers all issues of fact and law raised to the arbitration panel, § 3–2A–05(a); receives the award after it is made, § 3–2A–05(f); and files the award in court for confirmation, § 3–2A–05(h). The Director is the focal point for each of the Act's procedures, and it is evident that the legislature did not intend that the Director be bypassed by parties seeking judicial review.

■ Here, not only did the appellants fail to notify the Director that they rejected the award, but they neglected to file an action to nullify the award as provided by the BY rules. An action to nullify an arbitration award is a two step process. First, a notice of the action must be filed with the clerk of the court within 30 days after the award is served on the rejecting party. Rule BY2. The notice must identify the award and indicate that it is being rejected by

the party filing the notice. Not only is it filed in court but a copy is filed on the Director. The second step, under Rule BY4, is the filing of a declaration setting forth the allegations to be proved entitling the aggrieved party to relief. In order to perfect his standing in court so as to be entitled to judicial resolution of the claim, the aggrieved party must follow both steps within the prescribed time period.

■ Appellants complied with the second requirement but not the first. Although appellants filed their declaration only eleven days after they received notice of the arbitral award, the circuit court was not apprised of the award itself or of the fact that appellants were rejecting an award. Appellants thus did not file an action *to nullify* required by the Act; they merely filed in court a new action, independent of the former arbitration proceeding. This circumvention of the Act's procedures is inexcusable, especially in light of the Act's prescription that a court action may not be brought "except in accordance with this subtitle." § 3–2A–02(a).

■ Appellants' contention that they substantially complied with the provisions of § 3–2A–06 fails in light of the mandatory nature of the review procedures. As we see it, compliance with the procedures of § 3–2A–06 is a condition precedent to the maintenance of a court action. Here, appellants failed to comply with § 3–2A–06 and the BY rules, and the circuit court was correct in dismissing the action.

We therefore affirm the judgment of the Court of Special Appeals.

*JUDGMENT AFFIRMED.*

*APPELLANTS TO PAY THE COSTS.*

RODOWSKY and McAULIFFE, JJ., concur.

McAULIFFE, Judge, concurring.

I concur in the result, but write separately to express the view that this decision does not foreclose consideration of

the principle of substantial compliance in future cases concerning the procedural requirements for initiating a court action following arbitration.

The decision in this case rests upon findings of late filing and inadequate recitals in the pleading, and consequently there is no necessity to decide whether a notice of action might be drafted, filed and served in a manner sufficient to satisfy all statutory requirements for the filing of a notice of rejection as well. Nor need we decide whether the content and distribution of a complaint might under certain circumstances satisfy all notice and filing requirements of a notice of rejection and a notice of action. These are questions for another day.

RODOWSKY, J., concurs in the views here expressed.