520 A.2d 394

**David D. GOLUB**

v.

**Sheila D. Nagle SPIVEY.**

**No. 449, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Feb. 4, 1987.
Certiorari Denied June 18, 1987.

Timothy L. Mullin, Jr., (Miles & Stockbridge on the brief), Baltimore, for appellant.

Marvin Ellin (LaVonna L. Vice and Ellin & Baker on the brief), Baltimore, for appellee.

**150**

Argued before GILBERT, C.J., and BLOOM and KARWACKI, JJ.

KARWACKI, Judge.

This case commenced with the filing of a claim in the Health Claims Arbitration Office (HCAO) under the provisions of the Health Care Malpractice Claims Act. Md.Code (1974, 1984 Repl.Vol., 1986 Supp.), §§ 3–2A–01 to 3–2A–09 of the Courts and Judicial Proceedings article.[1]  Following an arbitration award of $150,000 in favor of the appellee, Shelia D. Nagle Spivey, against the appellant, David D. Golub, M.D., Dr. Golub took steps to reject the award in compliance with procedures delineated in § 3–2A–06 and Rule BY2.  Mrs. Spivey then filed a declaration in the Circuit Court for Baltimore City pursuant to Rule BY4. The case was tried before a jury whose verdict agreed with the award of the arbitration panel.  Dr. Golub appeals from the judgment entered pursuant to that verdict.

### FACTS

On July 25, 1979, Mrs. Spivey (Ms. Nagle at that time) was sent by her personal physician to Dr. Golub, a radiologist, for an intravenous pyelogram, a procedure permitting study of a patient's kidney function.  Although the pyelogram administered by Dr. Golub revealed inflammation and dysfunction of the left kidney, Dr. Golub erroneously reported a negative finding, *i.e.*, a normal pyelogram.  In reliance on Dr. Golub's inaccurate report, Mrs. Spivey's treating physicians failed to provide the immediate care required by her condition.  The condition went untreated until the spring of 1980 when Mrs. Spivey visited a urologist.  The urologist conducted tests which disclosed that Mrs. Spivey had suffered permanent damage to her left kidney due to an untreated infection.

---

1.  All further statutory references will be to this Article of the Code.

Mrs. Spivey filed a claim with the Director of the HCAO in August 1980. In addition to Dr. Golub, other health care providers named as defendants in the statement of claim were Richard Berkowitz, M.D., and George N. Karkar, M.D. An arbitration panel consisting of an attorney, a health care provider, and a lay person was appointed pursuant to § 3–2A–04(c) to (e).

On September 9, 1983, three days before the scheduled start of the arbitration hearing, Mrs. Spivey filed a motion in limine seeking to preclude Dr. Golub from presenting expert testimony at the hearing. Previously, on February 17, 1983, the panel chairman had issued an order requiring all counsel in the case to provide the names of experts to each other by July 15, 1983. The other two defendant health care providers each provided the names of two experts by that date, but Dr. Golub did not identify any experts. The panel granted Mrs. Spivey's motion in limine over Dr. Golub's objection that he intended to call the experts named by the other defendant health care providers. The panel also denied Dr. Golub's request for a continuance.

A hearing was conducted before the arbitration panel on September 15 and 16, 1983. At the beginning of the hearing, Mrs. Spivey voluntarily dismissed Dr. Berkowitz and Dr. Karkar as defendants. Dr. Golub admitted liability at the hearing, and at its conclusion on September 16, the arbitration panel rendered an award against Dr. Golub in the amount of $150,000. In accordance with § 3–2A–05(g), written notice of the award was delivered to the Director of the HCAO, who mailed copies of it to counsel for all parties on October 24, 1983.

On November 18, 1983, Dr. Golub filed a Notice of Rejection with the Director of the HCAO pursuant to § 3–2A–06(a). At the same time he also filed a Notice of Action to Nullify Award in the Circuit Court for Baltimore City, in compliance with § 3–2A–06(b)(1) and Rule BY2. Copies of both notices were mailed to counsel for Mrs.

Spivey on November 17, 1983, according to the attached certificates of service. The attorneys for Mrs. Spivey did not receive either notice and did not learn of their filing until December 22, 1983, when one of them checked the docket at HCAO after Mrs. Spivey had inquired of him as to when she could expect payment of the arbitration award.

On December 23, 1983, 35 days after Dr. Golub's Notice of Action to Nullify Award was filed, Mrs. Spivey filed a declaration in the Circuit Court for Baltimore City. In response to that declaration, Dr. Golub filed a Motion Raising Preliminary Objection and a Motion Ne Recipiatur or to Strike. The basis for both motions was Mrs. Spivey's failure to file her declaration within 30 days after the filing of Dr. Golub's Notice of Action to Nullify Award, as required by Rule BY4 a.1. Dr. Golub also filed a Motion to Vacate Award in which he challenged the propriety of the panel's decisions granting Mrs. Spivey's motion in limine prior to the arbitration hearing and refusing to grant Dr. Golub's request for a continuance.

Although the certificates of service attached to each of the three motions filed by Dr. Golub indicate that they were mailed to counsel for Mrs. Spivey on January 9, 1984, those documents, like the previously filed notices, were not received. It was not until February 10, 1984, when Mrs. Spivey's attorneys received a copy of Judge Thomas Ward's order granting Dr. Golub's motions, that they became aware of the filing of those motions. Mrs. Spivey immediately filed a motion to set aside Judge Ward's order, citing a lack of notice as to the filing of the three motions. Mrs. Spivey's motion was supported by an affidavit by two of her attorneys attesting to their lack of notice of the three motions granted by Judge Ward as well as of Dr. Golub's Notice of Rejection and Notice of Action to Nullify Award.

On September 7, 1984, Judge Ward conducted a hearing concerning Mrs. Spivey's motion to set aside his earlier order granting Dr. Golub's three preliminary motions. In a memorandum opinion filed November 14, 1984, Judge Ward

vacated his order. Judge Ward found that Dr. Golub was not prejudiced by Mrs. Spivey's filing of her declaration five days late, thereby rejecting the basis for Dr. Golub's Motion Raising Preliminary Objection and Motion Ne Recipiatur. In a separate order filed the same day, Judge Ward denied Dr. Golub's Motion to Vacate Award.

A jury trial was conducted in the Circuit Court for Baltimore City (John N. Maguire, J., presiding) on November 4 and 5, 1985. Dr. Golub again admitted liability at the trial, but he presented an expert who testified on the issues of causation and damages. The jury returned a verdict of $150,000 in favor of Mrs. Spivey.

Dr. Golub presents three questions for our consideration:

I. Whether the Circuit Court erred in denying Dr. Golub's preliminary defenses to the declaration when the declaration was not timely filed in accordance with the Health Care Malpractice Claims Act and the Maryland Rules of Procedure?

II. Whether the Circuit Court erred in denying Dr. Golub's Motion to Vacate Award in the face of improprieties in the arbitration proceeding?

III. Whether the Circuit Court erred in permitting prejudicial cross-examination of Dr. Golub's expert witness?

## I.

Under the Health Care Malpractice Claims Act, a party who is dissatisfied with an arbitration panel's award may reject the award and institute an action in court. In order to do so, the rejecting party must comply with certain procedures set forth in § 3–2A–06. The first requirement, which must be completed within 30 days after the award has been served upon the rejecting party (or within 10 days after disposition of an application to modify the award, whichever is greater), is the filing of a notice of rejection of the award with the Director of the HCAO and the arbitration panel. § 3–2A–06(a). At or before the time specified

for filing of the notice of rejection, the rejecting party must also file notice of an action to nullify the award with the clerk of a circuit court. § 3–2A–06(b)(1); Rule BY2 a. That notice should "identify the award and state that it is being rejected by the party filing the notice." Rule BY2 a. Copies of the notice of rejection and the notice of an action to nullify must be mailed to the other parties to the arbitration proceeding or their counsel. § 3–2A–06(a); Rule BY2 b.

Both the Court of Appeals and this Court have recognized the mandatory nature of the statutory procedures for instituting a court action to review a health claims arbitration award. *E.g., Cherry v. Brothers,* 306 Md. 84, 88, 507 A.2d 613 (1986); *Tranen v. Aziz,* 304 Md. 605, 614, 500 A.2d 636 (1985); *Osheroff v. Chestnut Lodge,* 62 Md.App. 519, 524–25, 490 A.2d 720, *cert. denied,* 304 Md. 163, 497 A.2d 1163 (1985); *Tranen v. Aziz,* 59 Md.App. 528, 534–35, 476 A.2d 1170 (1984), *aff'd,* 304 Md. 605, 500 A.2d 636 (1985). Compliance with the procedures set forth in § 3–2A–06 has been held to be a condition precedent to maintenance of a court action. *Tranen v. Aziz, supra,* 304 Md. at 614, 500 A.2d 636; *Osheroff v. Chestnut Lodge, supra,* 62 Md.App. at 525, 490 A.2d 720. The Court of Appeals discussed those procedures in *Tranen v. Aziz, supra,* 304 Md. at 612, 500 A.2d 636:

Both the notice of rejection provision ("notice of rejection *must* be filed," § 3–2A–06(a) (emphasis supplied)) as well as the action to nullify provision ("the party rejecting the award *shall* file an action in court to nullify the award," § 3–2A–06(b) (emphasis supplied)) are posed in imperative terms. More important, the statutory context of these directives plainly shows that compliance with them is mandatory and that noncompliance mandates dismissal.

The purpose of the legislative scheme is clear upon careful analysis. The notice of rejection serves as the final step in the arbitration procedure by which the award may be held non-binding and the claim held open for judicial resolution. The action to nullify, on the other

hand, is the exclusive step by which the aggrieved party may initiate proceedings in court.

Once the aggrieved party files notice of an action to nullify in a circuit court, subsequent proceedings are governed by the Maryland Rules. § 3–2A–06(b)(1); *Osheroff v. Chestnut Lodge, supra,* 62 Md.App. at 523, 490 A.2d 720. Rule BY4 a.1. states that "the plaintiff shall file and serve a declaration" within 30 days after notice of the action to nullify is filed. Rule BY3 designates the parties: "The party making the claim against the health care provider shall be the plaintiff in the action and the health care provider shall be the defendant." Thus, in this case Mrs. Spivey was responsible for filing a declaration in court even though Dr. Golub rejected the arbitration award and sought to have it nullified.

■ Dr. Golub maintains that Mrs. Spivey's failure to file her declaration within the 30–day period prescribed by Rule BY4 a.1. requires dismissal of the court action and automatic nullification of the arbitration award regardless of the circumstances. We disagree. We believe that where a claimant who is not the aggrieved party fails to file a declaration in a timely manner, the trial judge is vested with discretion to excuse that violation of the rule if the circumstances surrounding the claimant's noncompliance with the time limit justify that action.

The 30–day limit for filing a declaration does not appear in the provisions of the Health Care Malpractice Claims Act; rather, it appears in Rule BY4, which comes into play only after notice of an action to nullify has been filed in a circuit court. This Court has observed:

[T]he statute is strictly construed so as to effectuate the legislative purpose of screening malpractice claims *before* they reach the courts. Upon completion of the arbitration process and the filing of the correct and timely notice of rejection with the parties and court, the statutory screening process is terminated. All further proceedings are conducted in court and regulated, as are all other civil

cases, by the Maryland Rules. Although judicial review of the HCAO actions might be regarded as a continuation of the arbitration proceeding, it is not. Rather, it is a new, separate, and distinct proceeding. It is litigation. *Osheroff v. Chestnut Lodge, supra,* 62 Md.App. at 525, 490 A.2d 720 (emphasis in original), *quoted in Wyndham v. Haines,* 305 Md. 269, 276, 503 A.2d 719 (1986). Thus, we will be guided in our analysis of the effect of the rule violation in the instant case by the construction previously placed upon noncompliance with other rules prescribing time limits for the litigation process.

First, we note that Rule BY4 a.1., even though couched in mandatory language ("Within 30 days ... the plaintiff shall file ... a declaration."), does not indicate what sanction is to be applied in the event of noncompliance. A similar problem was presented in *People's Counsel v. Public Service Comm'n,* 52 Md.App. 715, 451 A.2d 945 (1982), *cert. denied,* 295 Md. 441 (1983), where the People's Counsel failed to file a memorandum of law within the 30–day period prescribed by Rule B12, governing appeals from administrative agencies. We there stated:

> In some instances, the applicable rules either require or expressly permit an extreme sanction for violation of the procedural requirements which they or other rules establish. *See, for example,* Maryland Rules 835, 1035, B5. In other cases, the rules provide either no specific sanction or offer a range of alternative sanctions, in which event the courts have tended to balance the purpose and importance of the requirement against the circumstances of its violation.

*Id.* at 720, 451 A.2d 945. We went on to rule that dismissal of an administrative appeal is not a mandatory sanction for failure to comply with Rule B12 and that the trial court did not abuse its discretion in declining to dismiss the People's Counsel's appeal. *Id.* at 720–21, 451 A.2d 945. We believe our reasoning in *People's Counsel v. Public Service Comm'n, supra,* is applicable here. Such an approach is

consistent with the general philosophy of the Maryland Rules expressed in Rule 1–201(a):

> These rules shall be construed to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay. When a rule, by the word "shall" or otherwise, mandates or prohibits conduct, the consequences of noncompliance are those prescribed by these rules or by statute. If no consequences are prescribed, the court may compel compliance with the rule or may determine the consequences of the noncompliance in light of the totality of the circumstances and the purpose of the rule.

■ Because Rule BY4 prescribes no consequences for noncompliance with its time limit, the trial judge was entitled to determine the consequences of Mrs. Spivey's noncompliance "in light of the totality of the circumstances." In cases involving noncompliance with other rule-prescribed time limits, it has been held that consideration of such matters is within the discretion of the trial judge, whose decision should not be disturbed unless that discretion was abused. *E.g., Faulkner v. Town of Chestertown,* 290 Md. 214, 220, 428 A.2d 879 (1981) (no abuse of discretion in permitting late filing of cross-claim); *Toomey v. Gomeringer,* 235 Md. 456, 459–60, 201 A.2d 842 (1964) (no abuse of discretion in permitting late filing of answer to zoning appeal); *Easter v. Dundalk Holding Corp.,* 233 Md. 174, 179–80, 195 A.2d 682 (1963) (rulings as to time for filing pleas will not be disturbed absent showing of prejudice or abuse of discretion); *Kramer v. Emche,* 64 Md.App. 27, 43, 494 A.2d 225, *cert. denied,* 304 Md. 297, 498 A.2d 1184 (1985) (granting of right to file a cross-claim or counterclaim after time for doing so has expired rests in sound discretion of lower court). *Cf. Evans v. Howard,* 256 Md. 155, 161, 259 A.2d 528 (1969); *Williams v. Williams,* 32 Md.App. 685, 691, 363 A.2d 598 (1976) (sanctions for failure to comply with discovery rules are within discretion of trial court).

■ Judge Ward exercised his discretion in this case when he reconsidered his order granting Dr. Golub's Motion Raising Preliminary Objection, Motion Ne Recipiatur, and Motion to Vacate Award. At the hearing on Mrs. Spivey's motion to set aside that order, Judge Ward accepted the explanation offered by Mrs. Spivey's attorneys as to why the declaration was filed five days late and concluded that Dr. Golub "was not prejudiced in any way by the delay, as he was well apprised of the cause of action." In light of those circumstances, Judge Ward elected to vacate his earlier order granting Dr. Golub's preliminary motions. We find no abuse of discretion in Judge Ward's decision.

Dr. Golub places great reliance on the words of this Court in *Tranen v. Aziz, supra*, 59 Md.App. at 533–34, 476 A.2d 1170, where various ways of not complying with the procedures for judicial review of an arbitration award were discussed hypothetically:

> If the award is in favor of the claimant and the health care provider rejects the award and files a notice of action to nullify, and thereafter the claimant fails to file a complaint within the allotted time, the arbitral award is nullified and the case is concluded.

To the extent that *dicta* supports Dr. Golub's argument in favor of mandatory dismissal under the circumstances presented in this case, we reject it.

■ Dr. Golub further argues that even accepting the assertions of Mrs. Spivey's attorneys that they did not receive copies of either the Notice of Rejection or the Notice of Action to Nullify Award,[2] non-receipt of those notices

---

2. Dr. Golub points out that the affidavit accompanying Mrs. Spivey's motion to set aside the order granting Dr. Golub's preliminary motions was not under oath, in noncompliance with Rule 1–304. No other affidavit was filed in support of counsel's contention that Dr. Golub's Notice of Rejection and Notice of Action to Nullify Award were not received. Relying on *Murnan v. Joseph J. Hock, Inc.*, 274 Md. 528, 531–32, 335 A.2d 104 (1975), Dr. Golub contends that absent a proper affidavit, counsel's mere assertion that the notices were not received was insufficient to rebut the presumption of service estab-

does not excuse the late filing of the declaration. In Dr. Golub's view, Mrs. Spivey's attorneys were charged with a continuing responsibility to keep abreast of developments at HCAO in Mrs. Spivey's case. We decline to impose such a duty. Once the health claims arbitration award was issued, Mrs. Spivey's attorneys were not required to check the HCAO docket to see whether a notice of rejection was filed. Nor could they be expected to check whether notice of an action to nullify had been filed in one of Maryland's circuit courts. Absent any such duty on the part of counsel, Mrs. Spivey's lack of notice as to Dr. Golub's action to nullify was properly considered by Judge Ward in excusing the late filing of the declaration.

## II.

■ The second issue raised by Dr. Golub concerns the Circuit Court's denial of his Motion to Vacate Award. Unless it is vacated by the court, an award rendered by a health claims arbitration panel is admissible as evidence in a subsequent court action to nullify the award. If admissible, the award is presumed correct, and the burden is on the party rejecting it to prove that it is not correct. § 3–2A–06(d); Rule BY5. Section 3–2A–06(d) states that an arbitration award is admissible "[u]nless vacated by the court pursuant to subsection (c)." Subsection (c) provides, in pertinent part:

> An allegation that an award is improper because of any ground stated in § 3–223(b) or § 3–224(b)(1), (2), (3), or (4) of this article shall be made by preliminary motion, and shall be determined by the court without a jury prior to trial.... If the court finds that a condition stated in

---

lished by the certificates of service attached to the notices. *See* Rule 1–323. We disagree. We think the *Murnan* holding is limited to its facts, which are distinguishable, and that under the circumstances here, it was within Judge Ward's discretion to accept the oral assertions of Mrs. Spivey's attorneys at the hearing before him that Dr. Golub's notices were not received. Therefore, any defect in counsel's affidavit is immaterial.

§ 3–224(b)(1), (2), (3), or (4) exists, it shall vacate the award, and trial of the case shall proceed as if there had been no award.

In his motion to vacate, Dr. Golub relied on § 3–224(b)(4), which states:

The court shall vacate an award if:

.      .      .      .      .

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement, refused to hear evidence material to the controversy, or otherwise so conducted the hearing, contrary to the provisions of § 3–213, as to prejudice substantially the rights of a party.

■ Dr. Golub contends that the arbitration panel, in granting Mrs. Spivey's motion in limine precluding Dr. Golub from presenting expert testimony at the arbitration hearing, "refused to hear evidence material to the controversy." Furthermore, Dr. Golub posits that the surprise caused by the granting of the motion in limine just prior to the scheduled start of the hearing constituted "sufficient cause" for granting his requested postponement. We think the court was correct in denying Dr. Golub's Motion to Vacate Award. Dr. Golub's argument overlooks the arbitration panel's basis for granting Mrs. Spivey's motion in limine. A deadline for naming experts had been established by the panel chairman in a scheduling order issued on February 17, 1983. That deadline was July 15, 1983. Dr. Golub not only failed to name any experts by that date, but he did not provide any names until the motion in limine was filed on September 9, 1983, at which point he sought to claim as his own the experts identified by the other two defendants.

The panel chairman in a health claims arbitration proceeding has the authority to decide all prehearing procedures

including issues relating to discovery. § 3–2A–05(c).[3] We believe exclusion of expert testimony on Dr. Golub's behalf was an appropriate sanction for Dr. Golub's failure to comply with the discovery deadline in the panel chairman's scheduling order.[4] Therefore, the Circuit Court did not err in denying Dr. Golub's Motion to Vacate Award.

### III.

■ Finally, we consider Dr. Golub's contention that the trial court erred in permitting prejudicial cross-examination of an expert witness called by Dr. Golub. Dr. Golub admitted at trial that he breached the standard of care in his treatment of Mrs. Spivey. Nevertheless, he disputed that this breach was the cause of any permanent damage to Mrs. Spivey. In support of that position, Dr. Golub offered the testimony of John H. Sadler, M.D., a nephrologist, who opined on direct examination that Mrs. Spivey suffered no deterioration in kidney function between the time of her visit to Dr. Golub in July 1979 and the discovery of her kidney infection in May 1980.

Counsel for Mrs. Spivey commenced his cross-examination of Dr. Sadler by asking:

> Could you explain to this jury why Dr. Golub has admitted that he violated acceptable standards of care in his interpretation of the x-rays of July 1979 that there was

---

**3.** At the time the panel chairman made the scheduling order in question, § 3–2A–05(c) read:

> (c) *Chairman of panel.*—The attorney member of the panel shall be chairman and he shall decide all prehearing procedures including issues relating to discovery.

That subsection was amended by Chapter 640, Acts of 1986, effective July 1, 1986, and now provides:

> (c) *Chairman of panel.*—The attorney member of the panel shall be chairman and he shall decide all prehearing procedures including issues relating to discovery and motions in limine. The chairman shall rule in camera on any motion in limine.

**4.** If Dr. Golub intended to call the experts named by the other defendants, he should have made this known to the other parties and the HCAO panel prior to the discovery deadline.

absolutely nothing wrong with that left kidney and every-
thing was normal? Why did the Defendant admit he
violated acceptable standards of care, could you possibly
explain that to the jury?

Over objection, Dr. Sadler was permitted to respond to that
question and subsequent questions concerning Dr. Golub's
admission of liability in the case. Dr. Golub argues that
allowing such testimony was prejudicial because Dr. Sadler
was called to testify on the issue of causation rather than
on the issue of liability, which Dr. Golub had already
admitted.

Traditionally, rulings concerning the scope of cross-exam-
ination have been left to the discretion of the trial court, to
be disturbed only upon a showing of prejudicial abuse of
that discretion. *Comm'n on Medical Discipline v. Still-
man,* 291 Md. 390, 422, 435 A.2d 747 (1981); *Nottingham
Village, Inc. v. Baltimore County,* 266 Md. 339, 356, 292
A.2d 680 (1972). Following the objection by counsel for Dr.
Golub to opposing counsel's first question to Dr. Sadler, the
following colloquy occurred among the court, counsel for
Mrs. Spivey (Mr. Ellin), and counsel for Dr. Golub (Mr.
Mullin):

MR. ELLIN: Your Honor, it would be absolutely preju-
dicial to permit this man to come up here and say every-
thing is peachy and that means nothing is wrong, but at
the same time, the Defendant having admitted liability, it
doesn't make any sense. I mean, he in effect, has said
Dr. Golub has not done anything incorrect.

THE COURT: What you are asking the witness, as a
result of an admission of liability about your client, you
are asking the witness his opinion—

MR. ELLIN: To reconcile.

THE COURT: I understand.

MR. MULLIN: He's already said that that is not a
negative I.V.P. If he wanted to ask about that, that's
fine, but to ask why Dr. Golub admitted liability is
getting way beyond—

MR. ELLIN: If I'm blocked, I would move that the so-called plea of liability is a farce to avoid getting into it. Now, either they are admitting liability or they are not. To admit liability and at the same time have somebody come in and imply there is no violation is skirting around—

MR. MULLIN: That's not what I'm doing.

MR. ELLIN: Well, you are doing that in objecting. I'd like him to reconcile his testimony with Dr. Golub's stand in the trial.

MR. MULLIN: I don't think that's appropriate.

THE COURT: I think it is proper cross-examination, and your objection is overruled.

We perceive no abuse of discretion in that ruling by the trial court.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY THE APPELLANT.