698 A.2d 531

**Maria R. MANZANO, Individually, etc.**

v.

**SOUTHERN MARYLAND HOSPITAL, INC. et al.**

**No. 98, Sept. Term, 1996**

Court of Appeals of Maryland.

Aug. 25, 1997.

Reconsideration Denied Oct. 7, 1997.

18

John J. Sellinger, Silver Spring, for Petitioner.

David A. Roling (William A. Ehrmantraut, Annapolis; Robert J. Farley, Columbia), all on brief, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

CHASANOW, Judge.

In this case we are called upon to decide whether the Court of Special Appeals erred in holding (1) that Petitioner failed to submit her claim to arbitration as required by the Health Care Malpractice Claims Act, Maryland Code (1973, 1989 Repl.Vol., 1992 Cum.Supp.), Courts & Judicial Proceedings Article, §§ 3–2A–01 *et seq.*,[1] and (2) that the arbitration panel chair properly dismissed Petitioner's claim for violation of a scheduling order. We hold that the Court of Special Appeals did err as to both issues. Therefore, we shall reverse the judgment of the Court of Special Appeals and remand the case to the circuit court with instructions to remand the claim to arbitration.

I.

On October 10, 1988, Anthony Manzano was admitted to Southern Maryland Hospital (the Hospital) by Dr. Robert M. Nedzbala to receive treatment for pneumonia. Mr. Manzano died six days later, while under the care of Dr. Nedzbala and the Hospital. Petitioner, Maria R. Manzano, instituted this medical malpractice action, individually and as personal representative of the Estate of Anthony Manzano, against Dr. Nedzbala and the Hospital (collectively, Respondents).

As required by the Health Care Malpractice Claims Act (the Act), Petitioner filed a claim with the Health Claims Arbitration Office (HCAO), on May 23, 1991, and an arbitration panel was assembled. The chair of the arbitration panel originally set a hearing date of August 4, 1992, but continued the hearing to March 15, 1993, when he became aware that claimant's expert, Dr. George Sample, had not made himself available for deposition by the opposing party. On August 11, 1992, the chair issued a revised scheduling order that required Petitioner to identify an expert witness by October 9, 1992,

---

1. We shall refer, in this opinion, to the statutes in effect at the time Petitioner's claim was dismissed from arbitration, November 25, 1992. All subsequent statutory references shall be to this version of the Courts and Judicial Proceedings Article unless otherwise indicated.

and to provide Respondents with three dates upon which the expert would be available for deposition by November 6, 1992. Petitioner did identify her expert within the time mandated by the scheduling order, and the expert chosen was, again, Dr. Sample. Petitioner also provided the potential deposition dates, albeit not until November 13, 1992, one week later than required by the scheduling order. Again, the delay was caused by Dr. Sample's refusal to cooperate. When the dates were finally obtained, Petitioner's counsel forwarded them to the chair via letter, dated November 16, 1992, in which he explained: "The delay in furnishing these dates was in no way due to the fault of the [Petitioner] or counsel."

Respondents moved to have Petitioner's claim dismissed as a sanction for the violation of the chair's scheduling order. The chair had the three prospective deposition dates in the file at the time of the hearing on Respondents' motions to dismiss. Petitioner's counsel argued that the minimal delay was neither his fault nor Petitioner's and did not prejudice Respondents in any way. Nevertheless, the chair granted Respondents' motions to dismiss by Order dated November 25, 1992, nine days after the dates had been provided.

Petitioner filed a notice of rejection of the arbitration award in the HCAO and an action to nullify the arbitration award in the Circuit Court for Prince George's County. Respondents filed motions to dismiss Petitioner's action to nullify, arguing that Petitioner was "flagrantly dilatory" and that her delay should be considered a failure to arbitrate. Petitioner argued, in her opposition to Respondents' motions to dismiss, that her actions had not been willful, that Respondents had not been prejudiced by the delay, and that her actions did not constitute a failure to arbitrate. Petitioner also filed a motion to vacate the arbitration award in the circuit court, arguing that the panel chair exceeded his power by imposing the extreme sanction of dismissal for Petitioner's one-week delay in complying with the scheduling order. *See* §§ 3–2A–06(c), 3–224(b)(3). Respondents opposed Petitioner's motion to vacate, arguing that she "fail[ed] to comply with [a] discovery order,"

and that a panel chair may dismiss a claim as a sanction for such a violation.

The circuit court denied Petitioner's motion to vacate the arbitration award on May 31, 1995.[2] The court found that "dismissal of an action for failure to comply with discovery requests is well within the discretion of the Panel Chairman," and that the failure to comply "is not required to be willful and contumacious." Thus, the court concluded that the panel chair did not abuse his discretion in dismissing Petitioner's claim. The circuit court also granted Respondents' motions to dismiss Petitioner's action to nullify, on June 29, 1995, and July 14, 1995, respectively, but it offered no supporting analysis for its finding that Petitioner's delay constituted a failure to arbitrate.

Petitioner appealed to the Court of Special Appeals, which affirmed the judgment of the circuit court in an unreported opinion. The intermediate appellate court held (1) that Petitioner's failure to provide dates for her expert's deposition by the date set by the panel chair constituted a failure to submit to arbitration as required by the Act, and (2) that the panel chair did not exceed his authority when he dismissed Petitioner's claim for violation of a scheduling order. This Court issued a writ of certiorari to the Court of Special Appeals on December 11, 1996. Petitioner asks this Court to address, in addition to the two issues raised below, whether the intermediate appellate court applied the correct standard of review when resolving issue number one.

II.

The Act requires a claimant, as a condition precedent to instituting an action in a court of law, to submit his or her

---

2. The Circuit Court for Prince George's County originally dismissed Petitioner's complaint on jurisdictional grounds. The Court of Special Appeals, in an unreported opinion, reversed the dismissal and remanded the case to the circuit court for further proceedings. (No. 1114, Sept. Term 1993).

claim to non-binding arbitration.[3] §§ 3–2A–02(a), 3–2A–04(a)(1); *Attorney General v. Johnson,* 282 Md. 274, 283–84, 385 A.2d 57, 63 (1978), *partially overruled on other grounds, Newell v. Richards,* 323 Md. 717, 594 A.2d 1152 (1991). If a claimant files an action in a circuit court without having first submitted the claim to arbitration, the court must dismiss the action. *Bailey v. Woel,* 302 Md. 38, 45, 485 A.2d 265, 268 (1984). In the case *sub judice,* the Court of Special Appeals held that the circuit court's dismissal of Petitioner's action was proper because her delay in complying with the scheduling order constituted a failure to submit the claim to arbitration as required by the Act. The two cases the court relied upon to support its holding, *Bailey,* 302 Md. 38, 485 A.2d 265, and *Robinson v. Pleet,* 76 Md.App. 173, 544 A.2d 1, *cert. denied,* 313 Md. 689, 548 A.2d 128 (1988), however, are inapplicable to the present case.

In *Bailey,* the claimants filed their claim with the HCAO and participated in discovery but, at the arbitration hearing, refused to make an opening statement or to put on any evidence. 302 Md. at 40–41, 485 A.2d at 265–66. The arbitration panel, unable to decide the merits of the case without evidence, dismissed the claim. *Bailey,* 302 Md. at 40, 485 A.2d at 266. The claimants then filed an action to nullify the award in the Circuit Court for Baltimore County, arguing that they were not required to put on evidence at the arbitration hearing because the mere filing of their claim with the HCAO constituted compliance with the Act's arbitration requirement. *Id.* The circuit court disagreed and found that the plaintiffs, by refusing to participate in the arbitration hearing, had not satisfied the Act's arbitration requirement. *Id.* The plaintiffs appealed to the Court of Special Appeals, which affirmed the circuit court's decision. *Id.* On its review of the judgment of the Court of Special Appeals, this Court held that, in order to satisfy the condition precedent to filing an action in a court of

---

**3.** Today, either party may waive arbitration after the claimant has filed the certificate of qualified expert. Maryland Code (1973, 1995 Repl. Vol., 1996 Supp.), Courts & Judicial Proceedings Article, § 3–2A–06B(b), (c).

law, the Act requires that a claimant present evidence before an arbitration panel. *Bailey*, 302 Md. at 45, 485 A.2d at 268.

In *Robinson*, the claimant filed her claim in arbitration but failed to comply with another of the Act's requirements, the filing of a certificate of qualified expert. 76 Md.App. at 174, 544 A.2d at 1. The panel chair, following the dictates of the Act,[4] dismissed Robinson's claim. *Robinson*, 76 Md.App. at 174–75, 544 A.2d at 2. Robinson then filed an action in the Circuit Court for Baltimore County to nullify and vacate the arbitration award. *Robinson*, 76 Md.App. at 175, 544 A.2d at 2. The circuit court dismissed Robinson's action, finding that the panel chair had acted properly under the Act. *Id.* The Court of Special Appeals affirmed the circuit court's decision, holding, *inter alia*, that the circuit court's dismissal of Robinson's action was proper because, as in *Bailey*, the claim was never arbitrated. *Robinson*, 76 Md.App. at 176–78, 544 A.2d at 3. Thus, the court held, the condition precedent necessary to file suit in circuit court was not satisfied. *Id.*

*Bailey* and *Robinson* each addressed a claimant's total failure to comply with an explicit requirement of the Act. These two cases provide no support for the intermediate appellate court's holding in the present case, however, because Petitioner did not fail to comply with the Act. She submitted her claim to the HCAO, and she filed a certificate of expert witness. Petitioner was fully participating in discovery at the time her claim was dismissed, and the delay in submitting her expert's prospective deposition dates was caused through no fault of Petitioner or her counsel.

The more accurate analysis, which should have been made in this case, is to examine whether Petitioner failed to make a *good faith effort* at arbitration, that is, whether she

---

4. The statute that controlled the arbitration panel chair's actions stated: "A claim filed after July 1, 1986, shall be dismissed, without prejudice, if the claimant fails to file a certificate of a qualified expert ... within 90 days from the date of the complaint." Md.Code (1973, 1984 Repl.Vol., 1987 Cum.Supp.), Courts & Judicial Proceedings Art., § 3–2A–04(b)(1).

intentionally delayed in turning over prospective deposition dates or in any way connived with her chosen expert in an effort to circumvent the Act's arbitration requirement. *See Karl v. Davis*, 100 Md.App. 42, 639 A.2d 214, *cert. denied*, 336 Md. 224, 647 A.2d 444 (1994). In *Karl*, claimants' counsel informed opposing counsel that he intended to present his expert's discovery deposition testimony, rather than live testimony, at the arbitration hearing. 100 Md.App. at 46, 639 A.2d at 216. Opposing counsel stated that he would object to the admission of the deposition testimony because "the expert's opinions were not rendered to a reasonable degree of medical probability." *Id.* At the arbitration hearing, claimants offered the expert's deposition testimony in lieu of live testimony, and the panel chair granted opposing counsel's motion for summary judgment on the ground that the expert's "deposition testimony as to violation of the standard of care was not stated to be within a reasonable degree of medical probability." *Karl*, 100 Md.App. at 47, 639 A.2d at 216. Claimants then filed an action to nullify the arbitration award in the Circuit Court for Wicomico County, which dismissed the action. *Id.* The circuit court found that the claimants, by presenting the deposition testimony after being notified of its inadequacies, had failed to arbitrate in good faith. *Id.*

On appeal, the Court of Special Appeals stated: "The question squarely before us is what will constitute a good faith effort at arbitration such that cases that subsequently proceed to the circuit court pursuant to ... § 3–2A–06 will not be dismissed for failure to arbitrate." *Karl*, 100 Md.App. at 50, 639 A.2d at 218. The court held that, in order to dismiss a case from the circuit court on the basis of a lack of good faith, "some evidence of deliberate or knowing conduct on the part of the claimant or his or her counsel" is required. *Karl*, 100 Md.App. at 58, 639 A.2d at 222. The court did not find any willful or deliberate action on the part of counsel that was intended "to circumvent the mandatory requirement that medical negligence cases be submitted to arbitration to undergo a thorough dispute resolution process prior to presenting the controversy to circuit court." *Karl*, 100 Md.App. at 59, 639

A.2d at 222. Claimants' attorney had honestly believed that the testimony, when viewed in conjunction with other evidence in the case, was adequate. *Karl,* 100 Md.App. at 58, 639 A.2d at 222. The court held that counsel's "misplaced reliance" on the expert's deposition did not "suffice[ ], as a matter of law, to demonstrate a lack of good faith in appellant's approach to the mandated arbitration process." *See Karl,* 100 Md.App. at 49, 639 A.2d at 217. Thus, the Court of Special Appeals reversed the decision of the circuit court. *Karl,* 100 Md.App. at 60, 639 A.2d at 223.

In the case at bar, the Court of Special Appeals never considered whether Petitioner or her counsel deliberately and willfully failed to turn over the prospective deposition dates in an effort to circumvent the mandatory arbitration requirement of the Act. Instead, the court stated: "So long as the panel's decision to dismiss appellant's claim was proper, the [circuit] court's finding that the claim was not properly arbitrated before the HCAO panel was correct." As our discussion of *Karl* demonstrates, this is not the standard of review. If the court had considered whether or not Petitioner's delay was willful and deliberate, it would have been compelled to reverse the decision of the circuit court. Petitioner's counsel stated that the delay was neither Petitioner's fault nor his; rather, the delay was caused by Petitioner's expert witness, who refused to cooperate in setting the three dates. There is no evidence that Petitioner and her counsel were attempting to avoid or unduly delay arbitration; they had participated fully in all of the events surrounding arbitration up to the time that the claim was dismissed. Thus, under the facts and circumstances of this case we cannot say that Petitioner or her counsel displayed a lack of good faith designed "to circumvent the mandatory requirement that medical negligence cases be submitted to arbitration." We must, therefore, reverse the judgment of the intermediate appellate court.

### III.

The Court of Special Appeals also held that the chair did not abuse his discretion by imposing upon Petitioner the

extreme sanction of dismissal for her violation of the scheduling order. Petitioner argues that the chair had no authority to sanction her for violating the scheduling order or, alternatively, that the chair abused his discretion by dismissing Petitioner's claim under the circumstances of this case. We shall hold that the chair did possess the authority to sanction Petitioner for violating the scheduling order but that imposing the ultimate sanction of dismissal, under the circumstances of this case, was an abuse of discretion.

The chair of an arbitration panel has a role similar to a judge in a trial. *See McClurkin v. Maldonado,* 304 Md. 225, 235, 498 A.2d 626, 631 (1985)(interpreting 1985 amendments to the Act). The chair decides "all issues of law" that arise between the filing of a claim and its final disposition, § 3–2A–05(a), and "all prehearing procedures including issues relating to discovery." § 3–2A–05(c). Additionally, § 3–2A–05(b)(2) states that "the provisions of the Maryland Rules relating to discovery are applicable to proceedings under [the Act]." Accordingly, the chair of an arbitration panel may sanction a party for a discovery violation. *See McClurkin,* 304 Md. at 236, 498 A.2d at 632 ("Once the adjudicator has determined a party has violated a discovery rule, the choice of sanctions involves weighing a number of factors including the seriousness of the violation and the extent of prejudice suffered by the adversary.").

Petitioner argues that the chair does not have the power to impose sanctions for the violation of a scheduling order, however, because a scheduling order is not "discovery." This argument is without merit. In *Golub v. Spivey,* 70 Md.App. 147, 520 A.2d 394, *cert. denied,* 310 Md. 2, 526 A.2d 954 (1987), the Court of Special Appeals held that failure to comply with an arbitration panel's scheduling order is sanctionable under § 3–2A–05(c). In that case, the defendant in a medical malpractice claim failed to name a qualified expert until nearly two months after the date prescribed by the scheduling order. *Golub,* 70 Md.App. at 160, 520 A.2d at 401. As a sanction for the violation, the panel chair refused to allow the defendant to present any expert testimony at the arbitration hearing. *Go-*

*lub*, 70 Md.App. at 151, 520 A.2d at 396. The claimant won a $150,000 arbitration award, which Dr. Golub asked the Circuit Court for Baltimore City to vacate. *Golub*, 70 Md.App. at 150, 159, 520 A.2d at 395, 400. The circuit court refused to vacate the award, and on appeal, the Court of Special Appeals affirmed the decision of the circuit court. The intermediate appellate court held that the violation of the discovery deadline in the scheduling order was sanctionable by the panel chair and that the particular sanction imposed was appropriate:

> "The panel chairman in a health claims arbitration proceeding has the authority to decide all prehearing procedures including issues relating to discovery. § 3–2A–05(c). We believe exclusion of expert testimony on Dr. Golub's behalf was an appropriate sanction for Dr. Golub's failure to comply with the discovery deadline in the panel chairman's scheduling order." (Footnotes omitted).

*Golub*, 70 Md.App. at 160–61, 520 A.2d at 401.

In the instant case, Petitioner failed to comply with a discovery deadline set in a scheduling order. Under the Act, the panel chair had the power to decide all issues relating to discovery, § 3–2A–05(c); *see also McClurkin*, 304 Md. at 235, 498 A.2d at 631, and under *Golub*, the violation of a discovery deadline set in a scheduling order is a discovery-related issue. 70 Md.App. at 160–61, 520 A.2d at 401. Therefore, the panel chair was entitled to sanction Petitioner for her delay in turning over the prospective deposition dates.

■ Maryland Rule 2–504, entitled "SCHEDULING ORDER" and adopted in 1994, plays no part in our analysis of this case because Petitioner's claim was dismissed in 1992. However, our holding would be the same if the Rule were applicable to this case.[5] Rule 2–504 was one of several provisions this Court adopted in an attempt "to expedite and

---

5. We are not deciding that the standard for dismissal for a discovery violation would necessarily be the same for a dismissal for violation of Rule 2–504, although dismissal in the instant case would be improper under any test.

control the orderly flow of civil litigation in the circuit courts." *Tobin v. Marriott Hotels*, 111 Md.App. 566, 572, 683 A.2d 784, 787 (1996) (discussing Rules 2–504, 2–504.1, 2–504.2, and 1211 b). When adopting Rule 2–504, this Court did not intend to abrogate the preexisting case law pertaining to scheduling orders. Thus, although the Rule does not, by its terms, provide for sanctions, the case law of Maryland makes the imposition of sanctions for the violation of a scheduling order appropriate. *See, e.g., McClurkin*, 304 Md. at 235, 498 A.2d at 631; *Golub*, 70 Md.App. at 160–61, 520 A.2d at 401. Indeed, if our courts could not enforce their scheduling orders through the threat and imposition of sanctions, the entire process of expedited case management would be at risk.

Additionally, although most of the rules relating to discovery are contained in chapter 400, the nature of the scheduling order has not changed by virtue of its placement in chapter 500. Scheduling orders, among other things, are intended to promote efficient and timely discovery. Thus, pursuant to § 3–2A–05(c), a panel chair is entitled to enforce the discovery deadlines contained in a scheduling order.

 Having reaffirmed that the violation of a chair's scheduling order is sanctionable, we now address whether the violation in this case warranted the extreme sanction of dismissal. Whether and in what manner to sanction a party for a discovery violation is generally left to the chair's discretion. *See Mason v. Wolfing*, 265 Md. 234, 236, 288 A.2d 880, 881 (1972) (referring to discretion of trial judge to impose sanctions for violation of discovery rules); *Lynch v. R.E. Tull & Sons, Inc.*, 251 Md. 260, 261–62, 247 A.2d 286, 286–87 (1968) (same). The dismissal of a claim, however, is among the gravest of sanctions, *Mason*, 265 Md. at 236, 288 A.2d at 881; *Lynch*, 251 Md. at 261, 247 A.2d at 287, and as such, is warranted only in cases of egregious misconduct such as "wil[l]ful or contemptuous" behavior, "a deliberate attempt to hinder or prevent effective presentation of defenses or counterclaims," or "stalling in revealing one's own weak claim or defense." *Rubin v. Gray*, 35 Md.App. 399, 400–01, 370 A.2d

600, 601 (1977) (holding dismissal appropriate where plaintiffs counsel admitted that he deliberately refused to answer interrogatories for thirteen months as a trial tactic) (citing *Lynch*, 251 Md. at 261–62, 247 A.2d at 287.); *see also*, *e.g.*, *Peck v. Toronto*, 246 Md. 268, 269–70, 228 A.2d 252, 253–54, *cert. denied*, 389 U.S. 868, 88 S.Ct. 139, 19 L.Ed.2d 142 (1967) (holding dismissal appropriate where, after twice failing to appear for depositions, petitioner appeared but refused to answer several material questions); *cf. Williams v. Williams*, 32 Md.App. 685, 695–97, 363 A.2d 598, 604–05 (1976)(holding dismissal inappropriate where, among other things, plaintiff's failure to be deposed was not willful or contumacious and resulted in no prejudice to defendant).

The panel chair, in this case, abused his discretion when he dismissed Petitioner's claim. There was no continuing refusal to comply with the scheduling order. There was merely a one-week delay, and the chair had the prospective deposition dates in his possession for a full nine days before he dismissed Petitioner's claim. Also, there is no evidence of willful or contumacious behavior on the part of Petitioner or her counsel designed to hinder Respondents' presentation of their defenses or to stall in revealing Petitioner's own weak claim. The dates were provided to the chair in a letter, in which Petitioner's counsel stated that he had great difficulty obtaining deposition dates and that it was neither his fault nor Petitioner's. Finally, the delay did not prejudice Respondents. There is no evidence to suggest that the parties would have been unable to comply with the remaining dates in the scheduling order: to complete discovery by February 26, 1993, and to hold a hearing on the merits on March 15, 1993. Under these circumstances, the panel chair was not justified in imposing the ultimate sanction of dismissal.

IV.

The judgment of the Court of Special Appeals is reversed. In order to dismiss an action for failure to arbitrate in good faith, a circuit court must find that a party exhibited deliberate or willful behavior with the effect of circumventing the

Act's mandatory arbitration requirement. In the instant case, there is no evidence that Petitioner or her counsel caused the delay willfully or deliberately, or that they in any way attempted to avoid arbitration. To the contrary, Petitioner had fully participated in the preliminary proceedings, and the chair had been informed that the delay was caused by an uncooperative expert witness. Thus, we hold that Petitioner's claim should not have been dismissed by the circuit court for failure to arbitrate in good faith. We also hold that Petitioner's claim should not have been dismissed by the arbitration panel chair as a sanction for violating the scheduling order. In this case, the failure to comply with the chair's scheduling order for a mere seven days was not intentional; rather, it was caused by Petitioner's uncooperative expert witness. In addition, the violation was corrected a full nine days before the claim was dismissed, and Respondents suffered no prejudice as a result of the delay. Imposing the extreme sanction of dismissal under the circumstances present here was an abuse of the panel chair's discretion.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND AND REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. PETITIONER TO PAY COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.*