545 A.2d 692

**Chia Chuen SU**

v.

**William R. WEAVER et ux.**

**No. 64, Sept. Term, 1987.**

Court of Appeals of Maryland.

Aug. 18, 1988.

Conrad W. Varner (Mark D. Thomas and Strite, Schildt & Varner, on the brief), Hagerstown, for appellant.

Gilbert H. Robinette (Henry E. Dugan, Jr. and Robinette, Dugan & Jakubowski, P.A., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

BLACKWELL, Judge.

There are two issues presented in this medical malpractice case.  First, we hold that the trial court improperly admitted hearsay testimony concerning an ultimate issue, thus rendering the verdict unreliable.  We therefore remand for a new trial.  Second, in an action to nullify a Health Claims Arbitration Panel's decision, the award is presented to the jury, but an explanatory opinion is not admissible.  However in this case, where the opinion had specific findings which were not included in the award, the jury should have been advised of those conclusions.  We summarize the facts and explain.

I.

Due to a significant recurrence of chronic hemoptysis [1] in January of 1981, the Respondent, William R. Weaver, was referred by his family doctor to a specialist who admitted him in Washington County Hospital for a bronchoscopy. The bronchoscopic examination indicated, apparently erroneously, that Mr. Weaver had cancer in his right lung. Based on this report, Mr. Weaver was referred to the Petitioner, Dr. Chia Chuen Su, for surgical management. Dr. Su examined Mr. Weaver in February of 1981 and recommended a surgical resection of the affected portion of the right lung.  In March of 1981, Dr. Su performed a bronchoscopy and then a lobectomy of the upper portion of Mr. Weaver's right lung.  A subsequent biopsy of the tissue excised during the bronchoscopy indicated that there was no cancer in Mr. Weaver's lung.

The parties are in dispute as to what occurred after the operation.  Dr. Su contends that he informed Mr. Weaver following the operation that the excised portion of his lung was noncancerous and that he did nothing to conceal the error made in the original diagnosis of cancer.  The Weav-

---

1. Hemoptysis is defined as "[b]ronchial or pulmonary hemorrhage; the spitting of blood derived from the lungs or bronchial tubes." *Stedman's Medical Dictionary* 637 (5th ed. 1982).

ers contend that Dr. Su informed Mr. Weaver, "we got it all," implying that Mr. Weaver did have cancer and that Dr. Su sought purposely to mislead Mr. Weaver in order to avoid any allegation that the operation may have been unnecessary.

The family first learned Mr. Weaver may not have had cancer approximately two years later from an anonymous telephone caller. The caller, who purported to be a nurse at Washington County Hospital, said Mr. Weaver never had cancer.

In September of 1983, the Weavers filed a complaint of medical malpractice against Dr. Su with the Health Claims Arbitration Office. The complaint alleged, *inter alia*, that Dr. Su negligently failed to properly diagnose, failed to render proper surgical treatment and failed to inform Mr. Weaver that the lobe excised from his lung was noncancerous. The Weavers contended that Dr. Su's failure to properly inform interfered with their marital relationship because of the constant fear of a relapse and/or contagious transmission. In March of 1985, an arbitration panel was convened and following a four day hearing, the panel awarded the Weavers $100,000.

In April of 1985, Dr. Su filed a notice in the circuit court to nullify the panel's award. In February of 1986, a jury in the Circuit Court for Washington County (Moylan, J.) rendered a verdict of $50,000 in favor of Mr. Weaver and $65,000 in favor of Mr. and Mrs. Weaver. Dr. Su filed a timely appeal to the Court of Special Appeals and that court in an unreported, *per curiam* opinion, affirmed. We granted certiorari to review the two issues presented.

II. *Testimony Recounting Anonymous Telephone Call*

A.

Joyce Weaver, Mr. Weaver's daughter-in-law, testified at trial she received an anonymous telephone call "about two years" after the surgery, which allegedly informed the Weavers for the first time that Mr. Weaver did not have

cancer. Over the repeated and timely objection of defense counsel, the trial court permitted Joyce Weaver to testify:

"I answered the phone. I didn't identify myself. I just said 'hello' and a lady on the other end of the phone said, 'Is this the home of Mr. Weaver who had lung surgery two years ago', and I said, 'This is his daughter-in-law. We live next door', and she said, 'Did he know that he never had cancer?.' I said, 'Well, he was told that they got it all and he didn't need any therapy', and I said, 'He hasn't needed any therapy up to this point'; and she was distraught and she said, 'Well, I just had to get it off my conscience.' She said, 'I had to tell somebody that he never had cancer', and she said, 'There's someone here in the hospital asking questions and I don't want to lose my job.' I told her, I said, 'I can assure you that my father-in-law is not behind any asking of questions or any investigation.' I said, 'To him, everything was settled with the surgery', and she just continued to get upset and more distraught, and she said, 'Well, I just had to tell somebody.' She did identify herself as a nurse from the hospital and I tried to calm her down and I said, 'Give me your name and number and I'll have my father-in-law call you and maybe you'll feel better talking with him.' When I asked her for that, she went hysterical and she said, 'I can't do that.' She said, 'I probably said too much already and I don't want to lose my job', and she said, 'I'd better hang up', and she hung up."

Dr. Su argues that the trial court improperly permitted Joyce Weaver to testify to an alleged out-of-court conversation she had with an anonymous telephone caller because such testimony is hearsay. The Weavers, conversely, argue that this testimony was properly admitted to show when they first received notice that Mr. Weaver did not have cancer. The Weavers contend that because the testimony was offered for the purpose of showing the state of mind of being put on notice, the testimony was properly regarded as nonhearsay.

## B.

Generally, statements made out-of-court that are offered for their truth are inadmissible as hearsay, absent circumstances bringing the statements within a recognized exception to the hearsay rule. *Kapiloff v. Locke,* 276 Md. 466, 471, 348 A.2d 697, 699–700 (1975). Hearsay has been defined as "testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." *Aetna Cas. & Sur. Co. v. Kuhl,* 296 Md. 446, 452, 463 A.2d 822, 826 (1983), *Kapiloff v. Locke, supra,* 276 Md. at 471, 348 A.2d at 699–700 (quoting C. McCormick, *Law of Evidence* § 246, at 584 (2d ed. 1972)).

Out-of-court statements may have an impermissible hearsay aspect as well as a permissible nonhearsay aspect. C. McCormick, *McCormick on Evidence* § 249, p. 734 (3d ed. 1984). Extrajudicial statements which are relevant and proffered, not to establish the truth of the matter asserted, but as circumstantial evidence that the statements were made, are considered nonhearsay and therefore admissible. *Lunsford v. Bd. of Ed. of Pr. Geo's Co.,* 280 Md. 665, 670, 374 A.2d 1162, 1165 (1977) (evidence that students were discussing rumors of impending violence prior to an attack on a fellow student is admissible, not to prove the truth of the matter asserted, but simply to establish that such statements were made);[2] *Greenwald v. State,* 221 Md. 245, 256, 157 A.2d 119, 125, *cert. denied,* 363 U.S. 719, 80 S.Ct. 1596, 4 L.Ed.2d 1521 (1960) (statements of witness that were in the nature of instructions are admissible, not to prove the truth of the matter asserted, but to show the witness acted upon the statements); *Sun Cab Co. v. Walston,* 15 Md.App. 113, 131–32, 289 A.2d 804, 815 (1972), *aff'd on other grounds,* 267 Md. 559, 298 A.2d 391 (1973) (testimony of police officer that he had heard statements made

---

**2.** Although these statements were held not inadmissible as hearsay they were excluded from evidence on other grounds.

that a taxi cab had been struck from the rear admissible, not to prove the ultimate issue, but to prove statements were made and when). *See also* McLain, *Maryland Evidence* § 801.5 (1987). Thus, the witness may testify as to the date a telephone call was received and that the telephone call notified the witness that Mr. Weaver did not have lung cancer. However, the witness may not testify as to the content of the conversation generally which in effect was substantive evidence of the ultimate issue. One of the ultimate issues presented at trial was whether Dr. Su properly and adequately informed Mr. Weaver postoperatively that he did not have cancer. Joyce Weaver's testimony strongly suggests Mr. Weaver was purposely misinformed of the results of his lung operation. We conclude the trial court erred in permitting Joyce Weaver to testify to the out-of-court conversation she had with an anonymous caller, with the exception of the date of the call and the allegation that Mr. Weaver did not have cancer. The inadmissible hearsay testimony was directed toward the ultimate issue of responsibility and should have been excluded.

III. *Health Claims Arbitration Panel's Award*

A.

In 1976 the General Assembly enacted the Maryland Health Claims Arbitration Act (the Act), Maryland Code (1974, 1976 Cum.Supp.) Courts and Judicial Proceedings Article, § 3–2A–01, *et seq.* 1976 Md.Laws Ch. 235 § 1. (All further references to code sections are to the Courts and Judicial Proceedings Article unless otherwise indicated.) This legislation substantially altered the procedure in which a medical malpractice claim is brought against a health care provider by requiring a malpractice claim to be submitted to a mandatory arbitration proceeding as a condition precedent to maintaining such an action in the circuit court. *Ott v. Kaiser–Georgetown Health Plan,* 309 Md. 641, 645, 526 A.2d 46, 51 (1987); *Cherry v. Brothers,* 306 Md. 84, 88–89, 507 A.2d 613, 615 (1986); *Tranen v. Aziz,* 304 Md. 605, 612, 500 A.2d 636, 639 (1985). *See also* § 3–2A–02(a). "All

issues of fact and law raised by the claim and response" are referred to the arbitration panel. § 3–2A–05(a). Once a panel has been selected and all prehearing issues are decided the claim is set for hearing. Section 3–2A–05 provides in pertinent part:

"(d) *Determinations.*—The arbitration panel shall first determine the issue of liability with respect to a claim referred to it. If the arbitration panel determines that the health care provider is not liable to the claimant or claimants the award shall be in favor of the health care provider. If the arbitration panel determines that a health care provider is liable to the claimant or claimants, it shall then consider, assess, and apportion appropriate damages against one or more of the health care providers that it has found to be liable.

\* \* \* \* \* \*

(h) *Confirmation of award.*—Subject to § 3–2A–06, the award of the panel shall be final and binding on the parties. After the time for either rejecting or modifying the award has expired the Director shall file a copy of the award with the circuit court having proper venue, as provided in Title 6, Subtitle 2 of this article and the court shall confirm the award. Upon confirmation the award shall constitute a final judgment."

A party may reject an award for any reason by filing a notice of rejection with the Director and the arbitration panel within 30 days after the award is served on the rejecting party in accordance with § 3–2A–06(a). In order to obtain judicial review [3] of a claim, the party rejecting the award must also file an action to nullify the arbitration

---

**3.** "Judicial Review" is referred to in the Act to describe the procedure by which a party rejecting an arbitral award may seek redress before a circuit court. The term is not used in its traditional sense as a review of an administrative proceeding in that the arbitration panel is not an administrative body. *Tranen v. Aziz,* supra, 304 Md. at 608 n. 1, 500 A.2d at 638; *see also Attorney General v. Johnson,* 282 Md. 274, 285–86, 385 A.2d 57, 63–64, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978).

award as set forth in § 3–2A–06(b). Regardless of who rejects the award, the party making the claim against the health care provider is the plaintiff and the health care provider is the defendant in the circuit court action. Md. Rule BY3.

Section 3–2A–06, which is the crux of the controversy in this appeal, provides in pertinent part:

"(d) *Admissibility of award; presumption of correctness.*—Unless vacated by the court pursuant to subsection (c), the arbitration award is admissible as evidence in the judicial proceeding. The award shall be presumed to be correct, and the burden is on the party rejecting it to prove that it is not correct."

### B.

In accordance with § 3–2A–06(d), the trial court permitted Mr. Weaver to enter into evidence the arbitration panel's determination which consisted of:

"ARBITRATION PANEL DETERMINATION ...

1. LIABILITY: Defendant is Liable
2. DAMAGES: $100,000
3. COSTS: To be Split Equally between Claimant and Defendant ..."

The trial court, however, denied Dr. Su's motion to enter into evidence the arbitration panel's opinion which accompanied the panel's award.

Dr. Su argues that "award" as used in § 3–2A–06(d) was intended by the General Assembly to refer to each determination of liability made by the arbitration panel when multiple breaches of the applicable standard of care are consolidated in one count. Dr. Su thus claims that the trial court erred in not permitting the jury to consider the arbitration panel's opinion which contained specific findings as to each

claim presented.[4]   In the alternative, Dr. Su suggests that the jury should be informed of those portions of the opinion which clearly and succinctly dispose of each issue of liability alleged.

The Weavers argue that no statutory authority exists for an arbitration panel to announce more than its decision on the question of liability and damages.   The Weavers contend that by allowing the arbitration panel's opinion into evidence, "the members of the panel would, in effect, be giving testimony to the jury."

### C.

The Act expressly provides: "[t]he arbitration panel shall first determine the issue of liability with respect to a claim referred to it...." § 3–2A–05(d); and "[u]nless vacated by the court ... the arbitration award is admissible as evidence in the judicial proceeding." § 3–2A–06.   The award which is introduced as evidence in the judicial proceeding is to contain the panel's determination of "the issue of liability."   Under the general rules of interpretation applicable throughout the Code, "[t]he singular always includes the plural, and vice versa, except where such construction would be unreasonable."   Md.Code (1957, 1987 Repl.Vol.), Art. 1, § 8.   The Weavers essentially contend that in all malpractice cases there is but one issue of liability which is to be answered either for the plaintiff or for the defendant. Dr. Su in essence maintains that there may be multiple issues of liability within the meaning of the Act, depending upon the proof and the theories of liability advanced by the claimant.   Dr. Su's analysis is more consistent with the purpose of the Act.   *See Kaczorowski v. Mayor & City Council of Baltimore,* 309 Md. 505, 525 A.2d 628 (1987).

---

4. Although Dr. Su contends there were several claims of medical malpractice alleged against him, the Weavers' STATEMENT OF CLAIMS filed in the circuit court consisted only of two counts: the first count contained all claims of negligence against Dr. Su, and the second count alleged interference with and injury to the claimants' marital relationship.

■ The general purpose of a compulsory, non-binding arbitration system for malpractice cases is to screen claims. One specific purpose of admitting the panel award into evidence with a presumption of correctness is to encourage a thorough presentation of the case at the arbitration stage. "By encouraging thorough presentation of the case at arbitration the [presumption of correctness] promotes final resolution of the claim in one stage (arbitration) rather than two (arbitration and trial)." *Attorney General v. Johnson,* 282 Md. 274, 292 n. 17, 385 A.2d 57, 68, n. 17 (1978) (quoting Note, *Medical Malpractice Arbitration: A Comparative Analysis,* 62 Va.L.Rev. 1285, 1303–04 n. 110 (1976)). In a malpractice case in which there are multiple liability issues the rule urged by the Weavers encourages resort to the courts by providing a claimant with an unfair advantage.

For example, in a case in which a plaintiff alleges that the physician originally misdiagnosed the condition, then prescribed the wrong treatment, and then failed to render adequate follow-up care, a panel might conclude that there was no negligence in the diagnosis or original treatment but that the physician fell below the standard of care in failing to realize after a reasonable period of time that the treatment was inappropriate in the particular case. If the jury in a civil trial is told only that the panel found for the plaintiff and the amount of the award, the jury may have the impression that the panel found against the physician on each of the alleged issues of liability.

■ The Act contemplates that the award which is introduced into evidence at trial will reflect for which party the arbitration panel found on each liability issue generated by the evidence. That is not to say that the panel must include in its award a finding as to each act of omission or commission alleged to have been negligent. In a single claim of negligent diagnosis, for example, allegations may include: that the doctor failed to consider the results of tests already done, or considered them but failed to comprehend their proper meaning, or failed to order additional tests that should have been done, or the like. The arbitrators are not

required to state their findings as to each act of negligence alleged to support their ultimate finding on that issue of liability. Indeed, each arbitrator could find a different act of negligence as the basis for a negligent diagnosis, and still agree on an award in favor of the claimant on that particular issue of liability.

■ However, when the issues of liability are sufficiently separate and distinct, the decision of the arbitrators as to each of these issues should be set forth in the award, and in the event of a judicial proceeding following arbitration, those decisions should be made known to the jury. The problem lies in determining when there exist separate issues of liability, as opposed to separate allegations of negligent conduct within a single issue of liability. Here, it is clear that the claim encompassed, and the arbitrators considered and determined separate issues of liability involving diagnosis, surgical treatment, and follow-up care. The opinion of the arbitrators specifically delineated those issues by stating:

> "We believe that Dr. Su's conduct with regard to the diagnosis and surgical procedures performed on behalf of Mr. Weaver was competent and within the standard of care of physicians in similar situations.
>
>     \*      \*      \*      \*      \*      \*
>
> [We] find for the Claimants solely on the issue of the Defendant's failure to meet the standard of care as to the postoperative period...."

■ These findings should have been set forth in the award, stated simply as ultimate findings without elaboration. Any desired explanation of the findings may be included in a separate opinion, but should not be included in the award because the Act contemplates that the award will be read to the jury.

Ordinarily, counsel will be expected to identify the separate issues of liability involved in a claim and attempt to secure an award that makes a finding as to each issue. Here, because the findings as to each separate issue of

liability were clearly spelled out by the panel, the failure to include those findings in the award is not fatal. Upon retrial, the jury should be instructed concerning the ultimate findings made by the panel on each issue of liability. These findings should be conveyed in simple terms, and not in the language of the panel's opinion.

JUDGMENT OF COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY AND TO REMAND TO THAT COURT FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.