652 A.2d 1154

**Robert P. LINZEY,**

**v.**

**Timothy J. CARRION, et al.**

**No. 379, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Feb. 1, 1995.

Ronald A. Silkworth, Glen Burnie, for appellant.

Carol L. Nicolette (Bruce R. Parker and Goodell, DeVries, Leech & Gray on the brief), Baltimore, for appellees.

Argued before MOYLAN, BISHOP and BLOOM, JJ.

BLOOM, Judge.

Robert P. Linzey appeals from a judgment of the Circuit Court for Baltimore City, entered on a jury verdict in favor of appellees, Timothy J. Carrion, D.D.S., and the professional

association by whom he was employed, Donald B. Lurie, D.D.S., P.A. The action arose out of the dental care and treatment provided to appellant by Dr. Carrion.

Appellant raises two issues for our consideration:

I.  Did the circuit court err in its ruling on appellee's motion in limine precluding counsel from discussing the Health Claims Arbitration procedure with the jury during the trial, erroneously concluding that it was "none of their business?"

II. Did the circuit court err in its supplemental instruction to the jury by advising the jury that the Health Claims panel decision was by majority vote and was not unanimous in response to the jury's question regarding the makeup of the panel, thereby undermining the "presumption of correctness?"

## FACTUAL BACKGROUND

On 18 May 1987, Dr. Carrion, an oral surgeon, performed a bilateral sagittal split osteotomy (BSSO) on appellant's lower jaw. The surgery was intended to move appellant's lower jaw forward for the purpose of improving the relationship between his upper and lower jaws, and to enhance his general appearance. Dr. Carrion applied fixation devices to secure the lower jaw during healing. These fixation devices were removed on 26 June 1987, and a panorex X-ray taken at that time indicated a normal relationship between the upper and lower jaw with no evidence of non-healing. A second X-ray taken during a follow-up examination on 8 July 1987, however, revealed that the surgical incision in the lower right side of appellant's jaw had not healed. Dr. Carrion performed a second operation on 16 July 1987 to reposition the lower jaw.

After 4 November 1987, appellant discontinued treatment with Dr. Carrion; in January 1988, appellant's orthodontist diagnosed an open bite. Appellant subsequently underwent oral surgery on both his upper and lower jaws in order to correct the open bite and a congenital upper midline deviation.

In May 1990, in accordance with the procedures set forth in the Maryland Health Claims Arbitration Act, Md.Code (1974, 1989 Repl.Vol., 1994 Cum.Supp.) § 3–2A–01 *et seq.* of the Maryland Courts & Judicial Proceedings Article, appellant filed a dental malpractice action against Timothy J. Carrion, D.D.S., Donald B. Lurie, D.D.S., and the professional association employing both doctors, Donald B. Lurie, D.D.S., P.A. A three member health claims panel, composed of a lawyer, a health care provider, and a lay person, heard the case. The panel chairman granted summary judgment in favor of Dr. Lurie, individually; at the conclusion of the arbitration the panel rendered an award in favor of appellant in the amount of $167,600.

Subsequent to the entry of the arbitration award, appellees discovered that the health care provider panel member, Dr. Oppenheim, a dentist, had dissented from the award. Appellees promptly filed a motion to modify or correct the arbitration award, requesting that the award be amended to reflect the 2–to–1 vote. The panel chairman denied appellees' motion.

Appellees then filed in the Circuit Court for Baltimore County an action to nullify the arbitration award. Appellant thereupon filed a timely complaint in the Circuit Court for Baltimore City, a proper venue, and the case eventually proceeded to a jury trial.

At the beginning of the trial, appellees filed a motion *in limine* in which they contended that any reference to the panel decision, without clarification that it was not a unanimous award, would unduly prejudice appellees. Appellees were concerned that the composition of the panel would be revealed to the jury without reference to the 2–to–1 award, and, as a result, the jury would assume that the arbitration award was unanimous and that the health care provider, a dentist, had agreed that Dr. Carrion had committed malpractice. The court denied appellees' motion, ruling that the jury would not be informed that the panel voted 2–to–1 in favor of appellant but that no suggestion was to be made that the

award was unanimous. Additionally, the court ruled that no reference was to be made regarding the composition of the health claims panel. When counsel remarked (prophetically) that the jury was going to wonder about the composition of the panel, the trial judge responded, "And I am going to tell them it is none of their business."

During the trial, appellant read a portion of the Health Claims Arbitration transcript into the record, in the course of which he inadvertently referred to one of the arbitrators as "Dr. Oppenheim." Appellees and the court deemed that reference to be a violation of the court's ruling prohibiting identification of panel members. Appellees again requested that the court inform the jury that the panel award was 2–to–1; the judge denied that motion.

During deliberations, the jury submitted a note to the court, asking:

Who sat on the arbitration board? Were they health professionals and/or lay people?

Disturbed by appellant's mention of "Dr. Oppenheim" to the jury, the judge decided to "balance out things" by informing the jury that the panel was composed of one lawyer, one lay person, and one health care provider, and that the panel decision was not unanimous. The court did not inform the jury which panel member had dissented from the award.

The jury returned a verdict in favor of appellees, and the court entered judgment thereon. Appellant filed a motion for a new trial, asserting that the court's ruling on appellees' motion *in limine*, prohibiting the parties from mentioning the procedures or composition of the health claims panel to the jury, and the court's jury instruction regarding the composition of the panel and the 2–to–1 award, were contrary to the law. The court denied appellant's motion, whereupon appellant filed this appeal.

## I. HEALTH CLAIMS ARBITRATION ACT

The Maryland Legislature enacted the Health Claims Arbitration Act, Md.Code (1974, 1989 Repl.Vol., 1994 Cum.Supp.)

§ 3–2A–01 *et seq.* of the Maryland Courts & Judicial Proceedings Article (hereinafter "the Act")[1] in an effort to "reduce the number of medical malpractice court suits by screening out frivolous claims at the arbitration level." *Newell v. Richards,* 323 Md. 717, 732, 594 A.2d 1152 (1991) (citing *Attorney General v. Johnson,* 282 Md. 274, 286, 385 A.2d 57 (1978)). The Act requires that a malpractice claim "be submitted to a mandatory arbitration proceeding as a condition precedent to maintaining such an action in the circuit court." *Su v. Weaver,* 313 Md. 370, 377, 545 A.2d 692 (1988) (citing *Ott v. Kaiser-Georgetown Health Plan,* 309 Md. 641, 645, 526 A.2d 46 (1987); *Cherry v. Brothers,* 306 Md. 84, 88–89, 507 A.2d 613 (1986); *Tranen v. Aziz,* 304 Md. 605, 612, 500 A.2d 636 (1985)); *see also* § 3–2A–02.

When a claim is filed, the Health Claims Arbitration Office assembles a three-member panel that will hear the case. § 3–2A–04. Each panel is composed of a lawyer, a lay person, and a health care provider, all of whom are chosen randomly from lists of qualified persons willing to serve as arbitrators of health care malpractice claims. § 3–2A–03(c). Each party is given a list of possible arbitrators and an opportunity to object to their inclusion on the panel. § 3–2A–04(c)–(d). Once assembled, the panel's function is to "determine the issue of liability with respect to a claim referred to it." § 3–2A–05(e). After the panel makes an award, either party may reject the award and file an action to nullify it. § 3–2A–06. Then, regardless of who rejects the award, the party making the claim against the health care provider will be considered the plaintiff and the health care provider will be considered the defendant at trial in the circuit court. Md.Rule BY3.

## II. ANALYSIS

The case *sub judice* challenges how much information the jury should be given about the procedures governing an award under the Health Claims Arbitration Act. At trial, the panel

---

**1.** All statutory references herein are to the Courts & Judicial Proceedings Article.

award is admitted into evidence with a presumption of correctness. § 3–2A–06(d). Regarding the admissibility of the panel award in the circuit court, the Act states:

> *Admissibility of award; presumption of correctness.*—Unless vacated by the court pursuant to subsection (c), the unmodified arbitration award is admissible as evidence in the judicial proceeding. The award shall be presumed to be correct, and the burden is on the party rejecting it to prove that it is not correct.

§ 3–2A–06(d). Discussing the objective behind admitting an arbitration award to the jury with a presumption of correctness, the Court of Appeals has stated:

> Admissibility is intended to discourage either party from failing to present a complete case at arbitration in hopes of vindication at trial. By encouraging thorough presentation of the case at arbitration the provision promotes final resolution of the claim in one stage (arbitration) rather than two (arbitration and trial).

*Su v. Weaver*, 313 Md. 370, 381, 545 A.2d 692 (1988) (citing *Attorney General v. Johnson*, 282 Md. 274, 292 n. 17, 385 A.2d 57 (1978) (quoting Note, *Medical Malpractice Arbitration: A Comparative Analysis*, 62 Va.L.Rev. 1285, 1303–04 n. 110 (1976))).

■ In a judicial proceeding, the award is introduced solely as evidence of the panel's determination. *Su*, 313 Md. at 380, 545 A.2d 692; *see also Lipscomb v. Memorial Hospital*, 733 F.2d 332, 338 (4th Cir.1984); *Attorney General v. Johnson*, 282 Md. 274, 292, 385 A.2d 57 *dismissed*, 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978) (stating that admissibility of the findings of a medical malpractice review panel is a rule of evidence and does not violate the right to a jury trial). Introducing the award into evidence is not meant to provide either party with an unfair advantage at trial. *Su*, 313 Md. at 381, 545 A.2d 692. The Act, however, does not address whether, when the award is entered into evidence, the jury should be informed of the composition of the panel or the vote of the panel members.

Relying on *Holman v. Kelly Catering,* 334 Md. 480, 639 A.2d 701 (1994), appellant argues that the jury should be informed of the composition of the panel in order to give "a meaningful *context* to the presumption." *Id.* at 488, 639 A.2d 701 (citing *Kelly Catering, Inc. v. Holman,* 96 Md.App. 256, 272, 624 A.2d 1300 (1993) (emphasis in original)). In *Holman,* a workers' compensation case, the Workers' Compensation Commission issued a decision finding that Holman was an independent contractor. As a result, Holman was precluded from claiming workers compensation benefits through Kelly Catering. *Id.* at 481–82, 639 A.2d 701. In an appeal from the Workers' Compensation Commission, the decision of the Commission enters into evidence in the circuit court with a presumption of correctness. *Id.* at 486–87, 639 A.2d 701.

During the trial in *Holman,* the judge informed the jury that there was a presumption that Holman was an independent contractor. The court did not admit the decision of the Commission in evidence and failed to tell the jury that the presumption arose from a decision of the Workers' Compensation Commission, made after an evidentiary hearing. We held that that failure constituted reversible error.

Unlike what occurred in *Holman,* the court in the case *sub judice* provided the jury with a meaningful context regarding the award. It admitted the award into evidence and explained to the jury that the award resulted from a hearing before a Health Claims Panel and that it was presumed to be correct.

The problem confronting the trial judge was created by appellees' motion *in limine,* which disclosed that the health care provider member of the arbitration panel had dissented from the award. In view of that information, which was not challenged by appellant, the trial judge had four possible responses to appellees' motion: (1) he could inform the jury of the make-up of the panel; (2) he could disclose that the award was not unanimous; (3) he could tell the jury about the composition of the arbitration panel *and* about the lack of unanimity among the panel members; or (4) he could decline to inform the jury about the make-up of the panel or the lack

of unanimity. He opted originally for the fourth choice. Later, however, because appellant's counsel had disclosed that one of the panel members was a Dr. Oppenheim and because the jury specifically inquired about the composition of the arbitration panel, the trial judge changed his mind and told the jury that the panel was composed of a lawyer, a health care provider, and a lay person and that their decision was not a unanimous one.

Although there is nothing in the Health Claims Arbitration Act specifically so stating, a unanimous decision by the three-member arbitration panel is not required. The general statute governing arbitration proceedings in Maryland, the Maryland Uniform Arbitration Act, Title 2, Subtitle 3 of the Courts and Judicial Proceedings Article of the Maryland Code, states in § 3–215(a), "The majority of the arbitrators may render a final award," and that award, whether by unanimous vote or majority vote of the three members of the arbitration panel, carries with it the presumption of correctness.[2]

We believe that in every case it is entirely proper to inform the jury that a health claims arbitration panel is composed of a lawyer, a health care provider, and a lay person; that the decision of the majority of the panel is the decision of the panel; and that the panel decision is presumed to be correct. Those are matters established by law, and there ought to be no secret about them. As was demonstrated by this case, the composition of the panel is information that a jury is likely to deem important. Moreover, the disclosure of that information to the jury cannot, in itself, prejudice either party. Informing the jury that in the very case before it one of the panel members dissented from the award, however, is improper and prejudicial to the party in whose favor the award was made. It would tend to undermine the presumption of correctness of the award, and thus

---

**2.** Under the Health Claims Arbitration Act, all issues of law are referred to the panel chairman (the lawyer member of the panel), whereas all issues of fact are referred to the arbitration panel.

defeat a major purpose of the Act. The jury should not be furnished cause to speculate as to whether the award in the case before it, from which one member dissented, is entitled to the same degree of presumption of correctness as a unanimous award. The presumption of correctness is not to be so diminished. Moreover, the lack of unanimity is not a fact that the parties or their counsel would ordinarily know; certainly it is not a fact that a party is **entitled** to know. And if, as in this case, one side discovers such information, it is a fact that is entirely collateral to the case at issue before the jury and thus not a fact that the party is entitled to establish by evidence if it is disputed or not conceded by the opposing party.

For the reasons set forth above, we hold that the circuit court erred in informing the jury that the decision of the arbitration panel was not unanimous and that the error, by tending to diminish or weaken the presumption of correctness of the award, was prejudicial to appellant. Accordingly, we must reverse the judgment appealed from and remand the case for a new trial.

JUDGMENT REVERSED AND CASE REMANDED FOR A NEW TRIAL.

COSTS TO BE PAID BY APPELLEES.