Ray A. HOTT, Sr., et al.

v.

Victor MAZZOCCO, M.D., et al.

Civil No. AMD 94–2686.

United States District Court,
D. Maryland.

Feb. 16, 1996.

Matt R. Ballenger, Suder & Suder, Baltimore, MD, for plaintiffs.

Tracey Gann Turner, Piper & Marbury, Baltimore, MD, for defendant.

## MEMORANDUM AND ORDER

DAVIS, District Judge.

### (i)

This action presents medical malpractice and wrongful death claims based on Maryland law. The decedent, Mary V. Hott, was a patient of the Defendant Braddock Medical Group, P.A., ("Braddock") for several years prior to 1990. During that time, Dr. Thomas Chappell—a member of Braddock—served as Mrs. Hott's regular physician. Mrs. Hott had a long history of medical problems, including occasional chest pains.

On Thursday, May 10, 1990, Mrs. Hott telephoned Braddock complaining of chest pain. Dr. Chappell was not working that day and Defendant Victor E. Mazzocco, M.D., was covering his calls. Mrs. Hott advised Dr. Mazzocco that she was having chest pain, dizziness and some numbness in her left ear. She had taken five nitroglycerin tablets to relieve the pain. It is unclear from the record whether the tablets provided only some relief or total relief, from her pain. In any event, Dr. Mazzocco's assessment was that Mrs. Hott's condition was the result of a gastroesophageal reflex (a.k.a. esophagitis or hiatal hernia) problem. This condition is caused when "acid-containing materials come from the stomach back up into the ... esophagus and causes pain." Pl.'s Mot. To Vacate Health Claim Arb. Award, Ex. B at 147. Dr. Mazzocco advised Mrs. Hott to rest in a lazy-boy or reclining chair and to call Dr. Chappell the following day. According to her husband, Mrs. Hott "had severe pain ... difficulty breathing" and "was unable to eat on May 11."[1] Nevertheless, she did not call or visit Dr. Chappell. Df.'s Mem. in Opp. to Mot. to Vacate Health Claims Arb. Award at 5.

Two days after her contact with Dr. Mazzocco, in the early morning hours of May 12, 1990, an ambulance was called to the Hott home at the request of Ms. Hott. She was taken to Sacred Heart Hospital. There she was evaluated by an emergency room physician. She was released a few hours after she arrived when it was determined that her complaints were not cardiac in nature. Later that same morning, Mrs. Hott was transported by another ambulance to a different hospital, Memorial Hospital. Within hours of her arrival, Mrs. Hott suffered a fatal myocardial infarction.

### (ii)

Mrs. Hott is survived by her spouse Ray Hott, Sr., and a disabled adult son, Michael Hott, Plaintiffs here. The complaint is set forth in two counts: negligence (count I) and wrongful death (count II). One of the Plaintiffs' claims is that Mrs. Hott provided for the care of her son. Thus, damages are sought for the cost of providing him with continuing care.

Prior to seeking relief in this Court, the Plaintiffs brought this action before the Health Claims Arbitration panel as specified in the Health Care Malpractice Claims Act, Md.Code Ann., Cts. & Jud.Proc. §§ 3–2A–01 et seq., (1974, 1995 Repl. Vol., 1995 Supp.) ("the Act"). A claim under the Act is tried before a panel consisting of a panel chairman (an attorney), a layperson and a health care provider. An arbitration hearing was convened before the panel on August 2, 1994.

At the beginning of the hearing, the Defendants moved in limine to exclude the expert testimony of two of the Plaintiffs' damage experts scheduled to testify with respect to Michael Hott's medical condition, the services he required and the value of those services. The basis of the Defendants' motion was that they had been prejudiced by the Plaintiffs' failure to provide discovery. The panel chairman ruled in favor of the Defendants with respect to the Plaintiffs' damage claims for future expenses.[2]

---

1. Although the Defendants do not offer any citation to the record, the Plaintiffs failed to object to this characterization of Mr. Hott's testimony in its Reply Memorandum; thus, this Court shall assume, for purposes of this opinion only, that the Defendants have accurately related Mr. Hott's testimony.

Moreover, in all instances were the Defendants have proffered facts about which the Plaintiffs have failed to object, this Court will presume the correctness of the Defendants' account for purposes of this opinion.

2. The chairman's ruling was based on a determination that it could be established with certainty that Michael Hott had lived to the date of the

The hearing lasted four days. David C. Abramson, M.D., and Michael Apstein, M.D., testified as expert witnesses on behalf of the Plaintiffs. Each doctor testified that Dr. Mazzocco's treatment of Mrs. Hott fell below the relevant standard of care and as a result Mrs. Hott died. Moreover, each doctor stated that the appropriate course of action would have been to either admit Mrs. Hott to the hospital or (at least) to have sent her to the emergency room on May 10. Neither doctor testified with respect to Mrs. Hott's failure to call Dr. Chappell on May 11 or what, if any, effect such failure may have had in forestalling her fatal heart attack. On cross-examination, Dr. Abramson testified that he had reached a preliminary opinion early in the case that Sacred Heart Hospital had also been responsible for Mrs. Hott's death. *See* Pl.'s Mot. to Vacate Health Claims Arb. Award, Ex. B at 198. Nevertheless, he stated that he "was relieved of the responsibility of evaluating [Sacred Heart Hospital's] care [apparently because the claim against it had been settled], and therefore no further discovery or any other materials were provided. [He] never reached a firm opinion about that." *Id.* at 200.

Jay Goodman, M.D., testified as the Defendants' expert witness. He testified that Mrs. Hott's heart attack was inevitable. Thus, Dr. Mazzocco's failure to send her to a hospital on May 10 was immaterial, and was not a contributing cause of her death on May 12. He stated that there was no treatment available which could have prevented her heart attack on May 12. Pl.'s Mot. to Vacate Health Claims Arb. Award, Ex. D. at 202.

At the close of the hearing, the Defendants requested that the panel chairman instruct the panel with respect to contributory negli-gence, which under Maryland law would bar any recovery. The Plaintiffs objected, arguing that there was no evidence whatsoever to support a theory of contributory negligence. The Defendants, on the other hand, maintained that they had met their

> burden of proving, through cross-examination of Plaintiffs' expert, Dr. Abramson's own testimony, that the care provided at Sacred Heart on May 12th caused Mrs. Hott's death, and cannot have caused her death unless she was capable of not dying on May 12th.
>
> Backing it up a date, if she had followed this instruction to see Dr. Chappell on May 11th then her outcome could have been different. In other words, Dr. Abramson testified that Sacred Heart caused her death on May 12th. That meant that she could have survived, then, if she had received other treatment.
>
> Our position is that she was contributorily negligent in not seeking that other treatment on May 11th, the day after her phone call to Braddock, as she was instructed on May 10th. I think that that's very clear. That's exactly what contributory negligence is. The case law backs it up.
>
> A patient who is instructed to do something, who fails to do it, is contributorily negligent.

*Id.* Ex. E at 60–61. The panel chairman ultimately decided to give a contributory negligence instruction over Plaintiffs' objection. *Id.* At 88. He stated that since there was some evidence that Mrs. Hott was instructed to contact Dr. Chappell, that the panel "was entitled to get the instruction...." [3] *Id.*

---

hearing and the value of the services required to that point. Any determinations after that date would require speculation on the part of the panel, and the Plaintiffs' untimely discovery had prejudiced the ability of the Defendants to defend against such claims. *See* Df.'s Mem. in Opp. to Mot. to Vacate Health Claims Arb.Award, Ex. 6 at 74–76, 94–95 and Ex. 7 at 141–160.

**3.** He gave the following instruction on contributory negligence:

"A plaintiff cannot recover if the plaintiff's negligence is the cause of the injury. The defendant has the burden of proving by a pre-ponderance of the evidence that the plaintiff's negligence was the cause of the plaintiff's injury. When one who knows and appreciates, or [if] he exercises ordinary care should know and appreciate, the existence of danger from which injury might reasonably be anticipated, he must exercise ordinary care to avoid such injury. And [if] by his voluntary acts or omissions he exposes himself to danger of which he has actual or imputed knowledge, he may be guilty of contributory negligence."

"A patient who after receiving treatment fails to return to the physician or surgeon for further treatment as instructed is guilty of con-

The panel rendered its decision on August 5, 1994. On a form labeled *"ARBITRATION PANEL DETERMINATION,"* on line 1 marked "LIABILITY," the panel typed in "Unanimous Verdict For Defendant." *Id.* Ex. F. No further explanation of the award was included.

◼ Subsequent to receiving the arbitration panel's determination, the Plaintiffs filed a "Notice of Rejection of Award" with the arbitration panel and a "Notice of Action to Nullify HCA Award" with this Court pursuant to Md.Code Ann., Cts. & Jud.Proc. §§ 3–2A–06(a) and (b). The Plaintiffs filed their complaint with this Court on the same day. Discovery has now been completed and a trial date is set. Presently before the Court is the Plaintiffs' Motion to Vacate the Health Claim Arbitration Award. As the matter has been adequately set forth by the parties in their memoranda, no hearing is necessary.[4]

### (iii)

Under the Act, unless the award is vacated, it "is admissible as evidence in the judicial proceeding. The award shall be pre-

sumed to be correct, and the burden is on the party rejecting it to prove that it is not correct." *Id.* § 3–2A–06(d). If the award is vacated, the case goes forward in a judicial forum as if there had never been an award. *Id.* § 3–2A–06(c).

◼ Any vacation of an award must comply strictly with the statutory requirements set out in the Act. The Maryland "General Assembly has restrictively defined the grounds upon which and the condition upon which a court may vacate an award and has expressly proscribed any possibility of substitution of a reviewing court's judgment for that of the arbitrator." *Nick–George Ltd. v. Ames–Ennis, Inc.,* 279 Md. 385, 389, 368 A.2d 1001, 1003 (1977). A mere error of law is not a sufficient ground upon which to vacate an award. *Southern Md. Hosp. Ctr. v. Edward M. Crough, Inc.,* 48 Md.App. 401, 407, 427 A.2d 1051, 1055, *cert. denied,* 290 Md. 721 (1981). The grounds for vacating a malpractice arbitration award are expressly set forth at § 3–224(b) of the Courts and Judicial Proceedings Article of the Maryland Annotated Code as follows:

---

tributory negligence, preventing recovery for injurious consequences from such failure. However, where the physician considers the treatments ended and does not instruct the patient to return, the patient is not chargeable with negligence for failure to return."
Pl.'s Mot. to Vacate Health Claims Arb.Award, Ex. D. at 127–28. Moreover, he explained that "if we find that there was no consequence of her failure to come back, then it's not contributorily—she's not contributorily negligent." *Id.* at 130.
This last statement by the panel chair suggests, as Defendants seem to argue, that the chair, as an attorney, could in effect "reinstruct" the panel if, during deliberations, he, the chair, concluded that there was insufficient evidence of causation to justify a contributory negligence instruction. Defendants have cited no Maryland authority to support such a construction of the Act or of the procedures required under the Act. The fact that the Act mandates that the chair of a panel shall be an attorney is scant reason to suppose the ordinary adversarial scheme should be modified so dramatically. The panel chair of an arbitration panel should make legal rulings in a timely fashion, under circumstances where the parties may understand the factual and legal issues to be covered in final argument, and without creating the prospect of "reinstruction" on legal rules during secret deliberations.

**4.** Section 3–224(a) of the Maryland Annotated Code, Courts & Judicial Proceedings Article (1974, 1995 Repl.Vol., 1995 Supp.), states that (with one exception which is not relevant here) "a petition to vacate the award shall be filed within 30 days after delivery of a copy of the award to the petitioner." The Maryland courts have stated time and again (in non-health-care-claims contexts) that this time limit is mandatory and cannot be circumvented. *See, e.g., Board of Educ. of Charles County v. Education Ass'n of Charles County,* 286 Md. 358, 364, 408 A.2d 89, 92 (1979); *Nick–George Ltd. v. Ames–Ennis, Inc.,* 279 Md. 385, 389, 368 A.2d 1001, 1003 (1977); *Security Constr. Co. v. Maietta,* 25 Md.App. 303, 334 A.2d 133 (1975). Subsection (a)'s time requirement, however, has not been described by the courts as jurisdictional. Moreover, the language of the statute could be read as incorporating only subsection (b) and not subsection (a) of § 3–224. *See* § 3–2A–06(c) ("Any allegation by any party that an award or the assessment of costs under an award is improper because of any ground stated in § 3–223(b) or § 3–224(b)(1), (2), (3), or (4) or § 3–2A–05(h) of this article shall be made by preliminary motion. . . . Failure to raise such a defense by pretrial preliminary motion shall constitute a waiver of it."). Regardless, the Defendants have not made any argument with respect to the delay in this case; thus any timeliness argument is deemed waived.

(b) *Grounds.*—The court shall vacate an award if:

(1) An award was procured by corruption, fraud, or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement, refused to hear evidence material to the controversy, or otherwise so conducted the hearing, contrary to the provisions of § 3–213, as to prejudice substantially the rights of a party....

■ Plaintiffs argue that the award in the instant case should be vacated for two reasons. First, they contend that the panel chairman improperly excluded the Plaintiffs' expert testimony on damages, which constituted "misconduct"; the award was, therefore, procured by "undue means." Pl.'s Mot. to Vacate Health Claims Arb. Award at 6. Second, they contend that since there was no evidence upon which a finding of contributory negligence could rationally be based, the panel chairman "exceeded his authority" in giving a contributory negligence instruction. *Id.* at 8–12. Thus, "the giving of the instruction resulted in an award that was obtained by undue means." *Id.* at 12. The fact that the award does not specify whether it was based on a finding of contributory negligence, the Plaintiffs argue, supports their position. Arguing by analogy to judicial proceedings, Plaintiffs contend that "Maryland law makes it very clear that if a verdict could be supported by more than one theory and one of those theories is clearly in error [then] the verdict must be reversed if it cannot be determined which theory the verdict is based upon." *Id.* at 13.

I agree with the Plaintiffs on this final point. The contributory negligence instruction was given in error. That error was prejudicial and seriously undermines the presumption of correctness of the award. Nevertheless, a prejudicial error of law is not a basis upon which this Court can vacate the award. Accordingly, although I have grave reservations about the fairness of the arbitration proceedings, faithful adherence to the letter of Maryland law compels the conclusion that the award should not be vacated, and the Defendants are entitled to have the award admitted in evidence at the trial of this matter.

(iv)

■ "The burden of proving contributory negligence is on the defendant." *Moodie v. Santoni,* 292 Md. 582, 586, 441 A.2d 323, 325 (1982). To be sure, in Maryland, the quantity of evidence which must be presented in order to get a contributory negligence instruction is minor. "Maryland has gone about as far as any state in holding that meager evidence of negligence is sufficient to carry a case to the jury." *Id.* at 587, 441 A.2d at 326. Nonetheless, the burden of production is not *de minimis. Fowler v. Smith,* 240 Md. 240, 247, 213 A.2d 549, 554 (1965) ("[A] mere scintilla of evidence, amounting to no more than surmise, possibility, or conjecture that such other party has been guilty of negligence [is insufficient]...."); *Moodie,* 292 Md. at 588–89, 441 A.2d at 326.

■ The inferential string which the Defendants attempted to draw from Dr. Abramson's testimony is flawed beyond redemption. Dr. Abramson testified that his opinion regarding Sacred Heart Hospital was preliminary and that he "never reached a firm opinion" regarding its negligence. Pl.'s Mot. to Vacate Health Claims Arb.Award, Ex. B. at 198–200. To speculate (as do the Defendants) from an unsupported preliminary opinion that Mrs. Hott could have been saved on May 12, to the conclusion that she could have (and would have) been saved on May 11, is far too attenuated a basis to find contributory negligence. Manifestly, there was no testimony that Mrs. Hott's heart attack could have been prevented if she had called Dr. Chappell on May 11.

The Defendants argue, however, that the instruction was not erroneously given for two additional reasons. First, the Defendants contend that the Plaintiffs' pleadings before the arbitration panel admitted that Mrs.

Hott's death could have been prevented as late as May 12. They cite to paragraphs 17, 18, 19 and 20 of the Plaintiffs' "First Amended Statement of Claim." This Court's review of paragraphs 17, 18 and 19 reveals that they each state a claim against someone other than Dr. Mazzocco or Braddock.[5] Paragraph 20 states essentially that all of the Defendants acted negligently. These pleadings simply allege alternative theories of liability against multiple defendants. *See* 4 Wigmore on Evidence § 1604 at 70–71 & n. 2 (collecting cases) (Chadbourn rev. 1972, 1995 Supp.). Accordingly, they hardly constitute evidence against the Plaintiffs that Mrs. Hott could have been saved if only she had called Dr. Chappell on May 11.

Finally, the Defendants contend that, regardless of whether there was other evidence of contributory negligence, Mrs. Hott failed to report her symptoms to the Defendants accurately. The Defendants point out that the Plaintiffs state that Mrs. Hott was "only partially relieved with five nitroglycerin pills," taken on May 10 prior to her telephone contact with Dr. Mazzocco. Pl.'s Mot. to Vacate Health Claims Arb.Award at 1. Dr. Mazzocco's testimony in arbitration, however, was that he was told that Mrs. Hott's pain had been "relieved" by the five pills. Df.'s Opp. to Mot. to Vacate Health Claims Arb.Award, Ex. 8 at 82–83. He stated that he took that to mean that her pain was gone. *Id.* He testified further that had he been told that she was still having chest pain after the five pills that "[t]here would have been no question she should come to the emergency room immediately." *Id.* He explained that the difference in treatment would be warranted because in the latter circumstance—where she was only partially relieved—"that's a warning that things aren't going well." *Id.* Therefore, according to the Defendants, there was sufficient evidence that Mrs. Hott's inadequate (i.e., negligent) report of her symptoms contributed to Dr. Mazzocco's decision not to send her to a

hospital, and was therefore a proximate cause of her fatal heart attack two days later.

 Assuming, *arguendo*, that the Defendants are correct that there was sufficient evidence that she failed to report her condition accurately, thus warranting a contributory negligence instruction, the particular instruction in this case was nevertheless erroneous. The instruction issued by the panel chairman included the following language: "A patient who after receiving treatment fails to return to the physician or surgeon for further treatment as instructed is guilty of contributory negligence, preventing recovery for injurious consequences from such failure." Pl.'s Mot. to Vacate Health Claims Arb.Award, Ex. D. at 127–28. Apparently, Defendants did not seek an instruction on, nor did the chairman instruct on, the "inadequate report" theory of contributory negligence. As explained *supra*, there was insufficient evidence that Mrs. Hott's failure to call Dr. Chappell on May 11 probably caused her heart attack. Giving an instruction on a theory of contributory negligence when there is no evidence to support it is erroneous as a matter of law. *See, e.g., Sieland v. Gallo*, 194 Md. 282, 286, 71 A.2d 45, 46 (1950). The result is no different when there may have been evidentiary support for some *other* theory of contributory negligence, but no evidentiary support for the theory covered by the instruction as given.[6]

 In a judicial proceeding, where it is impossible for a reviewing Court to determine whether a jury would have reached the same result without an erroneous instruction, the verdict must be vacated. *See Kennelly v. Burgess*, 337 Md. 562, 578, 654 A.2d 1335, 1343 (1995) (where an erroneous instruction was given, and the court was unable to determine that objecting party was not prejudiced by its inclusion, reversal was mandated); *Stevens v. Chandler Motor Co.*, 222 Md. 399, 406, 160 A.2d 772, 776 (1960) ("The principle of the cases seems to be that a court may not

---

5. Paragraph 17 states a claim against Health Care Providers and Sacred Heart Hospital. Paragraph 18 states a claim against Spectrum Emergency Care, Inc. Paragraph 19 states a claim against Dr. Isagani O. Laurencio, M.D.

6. As explained in note 3, *supra*, the panel chair's attention was focused exclusively on the "failure-to-call/come back" theory of contributory negligence.

rule that an error in … the giving of an erroneous charge can be cured by the verdict when the court is required to speculate as to what facts the jury relied on in reaching the verdict it did."); *Warfield v. Keyser*, 119 Md. 158, 168, 86 A. 152, 156 (1913). However, I am reviewing the validity of an arbitration award, not a jury verdict. While giving the contributory negligence instruction was an error of law, the narrow statutory grounds set forth in § 3–224(b) do not contemplate that legal errors may serve as a basis for vacating an award. *See Southern Md. Hosp. Ctr.*, 48 Md.App. at 407, 427 A.2d at 1055.

▮▮▮ Taking the language of § 3–224(b) on its face, an error of law is not akin to "corruption," "fraud," "misconduct" or "undue means" within the commonly accepted meanings of those words. As the Defendants persuasively argue, the term "undue means" "contemplates some type of bad faith in the process." Df.'s Mem. in Opp. to Mot. to Vacate Health Claims Arb.Award at 11. The same is true with respect to "misconduct" under subsection (2). Misconduct sufficient to warrant vacating an award is something patently egregious, such as an arbitrator sleeping during testimony or having *ex parte* contacts. *Id.* at 12 (citing *Ft. Wayne Community Schools v. Ft. Wayne Educ. Ass'n., Inc.*, 490 N.E.2d 337 (Ind.App. 1986); *Creative Homes & Millwork, Inc. v. Hinkle*, 109 N.C.App. 259, 426 S.E.2d 480 (1993)).

With respect to subsection (3) of § 3–224(b)—"arbitrators exceeded their powers"—§ 3–2A–05 of the Courts & Judicial Proceedings Article states that all issues of law are to be decided by the panel chairman. *Id.* at 12. The panel chairman did nothing more than what § 3–2A–05 authorizes him to do in ruling on the instruction. *Id.* Maryland cases support such a narrow construction of the Act. For example, the Maryland Court of Special Appeals has explained that "arbitrators exceed[ ] their authority" when "they reach a completely irrational result," *O–S Corp. v. Samuel A. Kroll, Inc.*, 29 Md. App. 406, 409, 348 A.2d 870, 872 (1975); *Snyder v. Berliner*, 79 Md.App. 29, 37, 555 A.2d 523, 526, *cert. denied*, 316 Md. 550, 560 A.2d 1118 (1989), or in the case of an arbitration agreement, they make rulings outside the four corners of the agreement, *O–S Corp.*, 29 Md.App. at 410, 348 A.2d at 873.[7] Neither set of circumstances is present here. Giving the contributory negligence instruction was certainly erroneous, however, it was not "completely irrational." [8]

▮▮▮ The same is true for the alleged error of the panel chairman in excluding the Plaintiffs' damage evidence. Section 3–2A–05 of the Courts and Judicial Proceedings Article states that the panel chairman shall decide all discovery matters. It has been held by Maryland's highest and intermediate appellate courts that the panel chairman can impose sanctions for failure to comply with discovery. *See, e.g., McClurkin v. Maldona-*

---

**7.** The Plaintiffs also argue that the case of *McKinney Drilling Co. v. Mach I Ltd.*, 32 Md.App. 205, 359 A.2d 100 (1976), stands for the proposition that an arbitrator exceeds his power when he fails to consider all of the claims before him. In that case, however, arbitration was pursued according to a contractual agreement. The agreement specifically set forth that the arbitrator must settle all claims, thus the real basis for the court's holding was that arbitrator had acted outside the scope of the contractual provisions which gave him his authority to act.

**8.** Plaintiffs also seek support for their request to vacate the award from *Su v. Weaver*, 313 Md. 370, 545 A.2d 692 (1988). In *Su*, the Court of Appeals construed the Act to hold that where "issues of liability are sufficiently separate and distinct, the decision of the arbitrators as to each of these issues should be set forth in the award, and in the event of a judicial proceeding follow-

ing arbitration, those decisions should be made known to the jury." *Id.* at 382, 545 A.2d at 698. The court further observed that "[t]he problem lies in determining when there exists separate issues of liability, as opposed to separate allegations of negligent conduct within a single issue of liability." *Id.*

Plaintiffs contend that primary negligence and contributory negligence constitute "separate and distinct" issues under the reasoning of *Su*, and I agree. When a panel chair allows a contributory negligence instruction as did the chair in this case, the award should specify the panel's decision of that issue. *Su* requires as much. Nevertheless, even apart from counsel's apparent failure to bring the *Su* case to the attention of the arbitrators, the error of the chair and/or the panel in failing to comply with *Su* in the instant case is at most an error of law or a defect in procedure which does not justify vacating the award.

*do,* 304 Md. 225, 498 A.2d 626 (1985) (dismissal for failure to comply with discovery order upheld); *Golub v. Spivey,* 70 Md.App. 147, 520 A.2d 394 (exclusion of expert testimony for failure to comply with discovery request was an appropriate sanction), *cert. denied,* 310 Md. 2, 526 A.2d 954 (1987). Moreover, the arbitration panel held in favor of the Defendants on liability; thus the testimony with respect to damages was not material to the arbitration panel's award. § 3–224(b)(4). That is, even an erroneous exclusion would have been harmless. In sum, exclusion of this testimony cannot serve as a basis for vacating the arbitration panel's award.

Accordingly, it is this 16th day of February 1996, by the United States District Court for the District of Maryland, ORDERED that the Plaintiffs' Motion to Vacate the Health Claims Arbitration Award BE, and hereby IS, DENIED.